819 A.2d 343

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND,

v.

Mary I. DUVALL.

Misc. (Subtitle AG) No. 14, Sept. Term, 2002.

Court of Appeals of Maryland.

March 17, 2003.

Melvin Hirshman, Bar Counsel and Raymond A. Hein, Assistant Bar Counsel for the Attorney Grievance Commission.

No argument on behalf of the respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

HARRELL, Judge.

Prompted by a complaint filed with Petitioner, the Attorney Grievance Commission of Maryland, and acting at the direction of the Review Board, *see* Maryland Rule 16–709,[1] Bar Counsel filed a Petition For Disciplinary Action against Mary I. Duvall, Respondent, charging her with violations of various of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812. The Petition alleged, based on the complaint, that Respondent violated Rules 1.15(a) and (b) (Safekeeping Property),[2] 1.16(d) (Declining or Terminating

---

1. Until July 1, 2001, Maryland Rule 16–709, as relevant, provided:
   a. Who may file. Charges against an attorney shall be filed by the Bar Counsel acting at the direction of the Review Board.
   Adopted 30 November 2000, effective 1 July 2001, Maryland Rule 16–741 now governs the filing of statements of charges. It provides:
   (a) Filing of Statement of Charges.
   (1) Upon completion of an investigation, Bar Counsel shall file with the Commission a Statement of Charges if Bar Counsel determines that:
   (A) the attorney either engaged in conduct constituting professional misconduct or is incapacitated;
   (B) the professional misconduct or the incapacity does not warrant an immediate Petition for Disciplinary or Remedial Action;
   (C) a Conditional Diversion Agreement is either not appropriate under the circumstances or the parties were unable to agree on one; and
   (D) a reprimand is either not appropriate under the circumstances or (i) one was offered and rejected by the attorney, or (ii) a proposed reprimand was disapproved by the Commission and Bar Counsel was directed to file a Statement of Charges.

2. Pursuant to Rule 1.15, as relevant
   (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
   (b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the

Representation),[3] 8.1(a) and (b) (Bar Admission and Disciplinary Matters),[4] and 8.4(c) (Misconduct).[5] Bar Counsel also alleged that Respondent violated Maryland Code (2000 Repl. Vol., 2002 Suppl.) Business Occupations and Professions Article, § 10–306.[6]

We referred the case to a judge of the Circuit Court for Prince George's County for hearing. *See* 16–711(a).[7] Following the hearing, the judge made findings of fact, as follows:

client or third person, shall promptly render a full accounting regarding such property.

**3.** Rule 1.16(d) provides:
(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

**4.** Rule 8.1, as pertinent, provides:
An applicant for admission to or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
\* \* \* \*
(a) knowingly make a false statement of material fact; or
(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6 [pertaining to the confidentiality of information].

**5.** Rule 8.4(c) provides that "[i]t is professional misconduct for a lawyer to: . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation"

**6.** Maryland Code (2000 Repl Vol., 2002 Suppl.) § 10–306 of the Business Occupations and Professions Article provides: "A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

**7.** Maryland Rule 16–711.a provides:
a. Findings. A written statement of the findings of facts and conclusions of law shall be filed in the record of the proceedings and copies sent to all parties.
*See* Rule 16–757, effective 1 July 2001.

"The Petitioner presented evidence that on February 28, 2000, Abebech Yirsaw retained the Respondent Mary Duvall to obtain child support for Ms. Yirsaw's nephew from the child's father who lived in Ethiopia. Ms. Yirsaw paid the Respondent a retainer in the amount of $2,000. The initial client interview lasted two hours. The Respondent's billing rate was $125.00 an hour. Communication between Respondent and her client soon broke down. Ms. Yirsaw then contacted another lawyer to pursue her legal claims. On June 13, Ms. Yirsaw discharged the Respondent and requested the return of her entire retainer. She testified she paid $100 to another attorney who advised her to report her experience with the Respondent to the Attorney Grievance Commission. She did so. On July 18, August 8 and August 31 of the year 2000, Bar Counsel wrote the Respondent regarding Ms. Yirsaw's complaint. The August 8 letter was unclaimed. On November 6, Bar Counsel's investigator requested documents and bank records from the Respondent. On November 10, 2000 the Respondent issued a refund check payable to Ms. Yirsaw for $2,000 but later voided it because she could not locate Ms. Yirsaw. On February 26, 2001 Bar Counsel notified the Respondent to appear at an inquiry panel and to produce Ms. Yirsaw's file and records pertaining to the receipt, maintenance and deposit of the $2,000 fee payment. On March 19, 2001 Respondent appeared before an inquiry panel. Respondent testified under oath that she deposited Ms. Yirsaw's fee payment into her escrow account. The Chairman of the inquiry panel requested the Respondent to produce Ms. Yirsaw's file and any escrow accounts pertaining to her retainer and return after the lunch break. The Respondent failed to return and called in sick. At the court hearing, she testified she was too embarrassed to return to the first inquiry panel. On May 24, Bar Counsel filed a second complaint against the Respondent alleging her failure to cooperate with Bar Counsel and lying to the inquiry panel. A second inquiry panel was convened on September 17. It was at this hearing that the Respondent admitted that she lied to the first inquiry panel about depositing the $2,000 in her escrow account, and admit-

ted that she used the retainer to pay her rent. She also admitted that she failed to fully cooperate with the Petitioner's investigator and the inquiry panel. On or about November 10, 2001 Respondent refunded $2,000 to Ms. Yirsaw.

"In trying to offer some explanation for her conduct, the Respondent contends that she was under severe mental depression at the time of the above incidents. She produced evidence that she developed symptoms in 1986 and was evaluated and treated by Dr. Raymond DePaulo, a world-renowned expert in the field of depression and the current chairman of the department of Psychiatry at Johns Hopkins Hospital. Dr. DePaulo diagnosed her with a form of Bipolar Disorder (or manic-depressive disorder).

"At the time that she was retained by Ms. Yirsaw, she said that she was working on a stressful appellate brief and that her law practice was not generating enough income to care for herself and her adopted child. In March 2000 she sought treatment from Dr. Karen Myers, a family practitioner, and began taking Ritalin.

"Her depression continued and finally in June 2001 she consulted Dr. David Williamson, a psychiatrist. Dr. Williamson diagnosed her as major depression recurrent and prescribed Welbutrin and Paxil, anti-depressant medication. He has been treating her ever since and opines that she should be on this medication for at least two more years. Dr. Williamson described her depressive illness as a brain-based disease that causes impaired judgment and a pervasive sense of pessimism with no way out of the mounting stress and disruption in her life. He said that one out of four to six patients with this disease ultimately commit suicide. He opines that these types of impairments are not in any way under the control of the patient or reflection of any character weakness."

The hearing judge noted that Respondent admitted "all of the allegations charged by the Petitioner." On this and other findings recited *supra*, he concluded that Respondent violated Rule 1.15(a) by failing to deposit the retainer in her escrow account and by failing timely to return the unearned portion

to Ms. Yirsaw, having earned only $250 of the $2000 retainer, and Rule 8.1(a), by failing to respond to Bar Counsel and its investigators and by lying to the Inquiry Panel. The hearing judge made no findings as to the alleged violations of Rules 1.16(d) and 8.4(c) or § 10–306. As to each of the latter, he expressed his belief that they were duplicative—"basically the same as," "repeats of," or "similar to"—one or both of the rule violations found.

The hearing judge also concluded that Respondent's violations of the Rules of Professional Conduct were mitigated. He pointed to his finding that Respondent "had a severe mental illness diagnosed as early as March of the year 2000, shortly after she was retained by Ms. Yirsaw." As to this conclusion, the judge commented:

Although she (wrongly, in the court's view) continued to handle cases, increasing stress and depression impaired her judgment in February 2000. It is true that she did not see Dr. Williamson until June 2001 but it is clear that she had exhibited frequent symptoms of her depression prior to that time. Her witnesses, Edith Orem and Reginald Orem, who have known her since 1993, corroborated this. They could see from the vantage of concerned friends that she was under considerable stress.

That Ms. Yirsaw was reimbursed the total amount of the retainer paid Respondent represented additional mitigation in the hearing judge's eyes. Noting that Respondent could have claimed the amount earned for the consultation, he opined that Ms. Yirsaw's only economic loss was the $100 she paid successor counsel, as to which he recommended the entry of a judgment in that amount.

While acknowledging that there was no excuse for Respondent lying to the Inquiry Panel or for failing to cooperate with Bar Counsel, the judge nevertheless determined that there was mitigation because Respondent did not offer any excuse and expressed extreme remorse. He also relied on Dr. Williamson's opinion that Respondent "had little or no control over her impaired judgment and that it was a product of her

brain disease." In addition, the hearing judge found the conduct underlying this case to be isolated from Respondent's other conduct as an attorney.

Petitioner filed with this Court Exceptions and a Recommendation for Sanctions.[8] With respect to the former, it "excepts to the court's apparent oversight in not finding the charged violation of Rule 8.1(b)." Pointing out that that section of the Rule addresses a respondent's failure to respond to Bar Counsel, while Rule 8.1(a) prohibits lying and false testimony, Petitioner notes that Respondent admitted failing to respond to several of Bar Counsel's letters seeking a response to the Yirsaw complaint and to verbal requests for information and documents made by Bar Counsel's investigator. It also relies on the fact that, as Respondent also admitted, "[she] ignored the first Inquiry Panel's pre-hearing subpoena letter commanding production at the Panel hearing of her representation file and 'any records pertaining to [the Respondent's] receipt, maintenance and deposit of the $2,000.00 fee payment [she] received from Mrs. Yirsaw.' " Therefore, Petitioner argues that the hearing judge improperly subsumed the Rule 8.1(b) violation under the Rule 8.1(a) violation.

As indicated, the hearing judge made no finding with respect to whether Respondent violated § 10–306 of the Business Occupations and Professions Article, although he acknowledged similarities regarding the allegations concerning the Rule 8.4(c) violation. Believing that § 10–306 is violated

---

8. Petitioner noted clarifications and corrections in the hearing judge's Opinion and Order, not rising to the level of formal exceptions, that needed to be made. Although acknowledging that the hearing judge accurately reported that Petitioner's investigator requested documents and bank records from Respondent on 6 November 2000, Petitioner clarifies that the initial request was made when the investigator met with Respondent on 24 October 2000. In addition, it noted that Respondent disputed that she "called in sick" after the lunch break during the first Inquiry Panel, noting the absence of any evidence to that effect and the fact that Respondent did not so testify during her testimony before the hearing judge. Finally, Petitioner corrects the date of the second Inquiry Panel hearing to be 11 September 2001, rather than 17 September 2001, as the hearing judge recited.

"[w]here, as in this case, a lawyer willfully takes an advance fee retainer and uses the money for her personal benefit before earning legal fees," Petitioner excepts to the hearing judge's failure to make a specific finding in that regard. Similarly, he made no specific finding as to the asserted violation of Rule 1.16(d), expressly noting, as in the case of the § 10–306 and Rule 8.4(c) alleged violations, its overlap with Rule 1.15. Excepting to this omission, Petitioner insists:

> While there is some overlap between the violation of Rule 1.15(b) which is based on the Respondent's failure to deliver promptly funds that Mrs. Yirsaw was entitled to receive, and Rule 1.16(d)'s requirement that a discharged lawyer refund any advance payment of fee that has not been earned, ... the evidence supports a separate violation of Rule 1.16(d).

It urges, to the extent that that violation was not specifically found by the hearing judge, this Court should sustain Petitioner's exception and find a violation of Rule 1.16(d).

Petitioner recommends that Respondent be suspended indefinitely from the practice of law. While it offers no recommendation with respect to a minimum period of suspension to be served before being eligible to petition for reinstatement, Petitioner asks the Court to require Respondent's compliance with present Maryland Rule 16–781 when seeking reinstatement, i.e., the reimbursement to Ms. Yirsaw of the $116.33 she spent obtaining the refund of her retainer fee and the payment of any judgment for costs that is entered against Respondent in this matter.

The recommendation of an indefinite suspension, Petitioner explains, is based on Dr. Williamson's psychiatric report diagnosing Respondent as suffering from depression, notwithstanding what Petitioner characterizes as Respondent's "pattern of dishonesty." Although far from happy with the timing of the submission of the report and, thus, its ability to question the author, Petitioner states clearly that it does not challenge the diagnosis of depression. Nor does Petitioner

contest a causal connection between Respondent's depression and her misconduct:

> While Dr. Williamson cites no specific causal connection between the Respondent's illness and her capacity for telling the truth, he does discuss in general terms how the Respondent's illness causes impaired judgment. The Respondent's illness and the effects thereof were further substantiated by her own testimony.

Respondent neither excepted to the hearing judge's findings or conclusions, nor filed a recommendation as to sanction. In fact, even though apprised of Petitioner's recommendation that she be suspended indefinitely, Respondent did not attend the hearing before this Court.

Concluding that Petitioner's exceptions have merit, we shall sustain them. First, we note that Respondent admitted all of the allegations made by Petitioner. Thus, as Petitioner suggests, that alone should have triggered findings by the hearing judge as to each of the charged rule violations.

Rule 8.1(a) prohibits knowingly making a false statement of material fact, while Rule 8.1(b), among other things, proscribes the knowing failure to respond to a lawful demand for information from a disciplinary authority. The hearing judge found, with respect to Rule 8.1, that Respondent failed to respond to Bar Counsel and his investigator and also lied to the Inquiry Panel. He concluded, however, that Respondent only violated Rule 8.1(a). Because section (a) of the Rule is not sufficiently broad enough to encompass the knowing failure to respond to Bar Counsel's request for documents and information, a violation covered specifically by Rule 8.1(b), and the undisputed evidence supports violations of both, it follows that the hearing judge necessarily should have found a violation of Rule 8.1(b) as well.

The mandate of § 10–306 is clear. Trust money must be used for the purpose for which the trust money was entrusted to the lawyer, and for no other. Use of a retainer fee that has not yet been earned to pay one's rent contravenes that mandate because it is a purpose different from that for which the

retainer fee was entrusted. That the same conduct may also involve dishonesty, fraud, deceit, or misrepresentation, which Rule 8.4(c) proscribes, does not negate the applicability of § 10–306. Accordingly, we agree with Petitioner that the hearing judge erred in failing to find a violation of § 10–306.

To be sure, there is an overlap between the requirement of Rule 1.15(b) that a lawyer in receipt of the funds of a client "promptly notify the client" and "promptly deliver to the client . . . any funds or other property that the client . . . is entitled to receive" and the admonition of Rule 1.16(d) to lawyers to, inter alia, "refund[ ] any advance payment of fee that has not been earned." Nevertheless, the situation addressed in Rule 1.16(d) more closely resembles the facts of the present case. What was at issue from the time when communications between Respondent and her client broke down was the return of an advance fee payment that had not been earned. Respondent did not simply receive funds in which the client had an interest; the funds were paid to her in anticipation of being earned subsequently. When they were not earned, it was incumbent upon Respondent to refund them promptly, as Rule 1.16(d) prescribes. Thus, while 1.15(b) technically may apply, as the hearing judge found and Respondent conceded, Rule 1.16(d) most assuredly also applies and was violated. The hearing judge should have so found.

Turning to the remaining question, the appropriate sanction, we shall accept Petitioner's recommendation. Ordinarily the type of conduct engaged in by Respondent and which resulted in the violations of the Maryland Rules of Professional Conduct found here would result in disbarment. *See Atty. Griev. Comm'n v. Vanderlinde*, 364 Md. 376, 773 A.2d 463 (2001).[9]

---

**9.** Vanderlinde, while employed in a non-legal capacity with King's Contrivance Community Association in Columbia, Maryland, misappropriated $3,880.67, using the money for her own purposes, but replacing it before she left that employment. *Vanderlinde*, 364 Md. at 381, 773 A.2d at 465. She was found to have violated Rules 8.4(a), (b), and (c) of the Rules of Professional Conduct. *Id.* at 381, 773 A.2d at 466. Freely admitting the misappropriations, Vanderlinde offered, by way of mitigation of the severe sanction of disbarment, "the pressures of her life and

We impose an indefinite suspension in the present case *solely* because: (1) Bar Counsel, in his written Recommendation for Sanction filed in this matter on 2 October 2002 (before oral argument), proposed indefinite suspension as the appropriate sanction; [10] (2) Respondent neither filed a contrary recommendation as to sanction nor appeared at oral argument before this Court; (3) Respondent may have been influenced by, or even agreed with, Bar Counsel's recommendation as to sanction and, having nothing to add, elected not to respond or appear; [11] and, (4) Respondent might have acted differently to

the impairment of her mental faculties, including her periods of depression." *Id.* This Court rejected that defense and, in the process, established a high threshold for such a defense in similar cases. We said:

[I]n cases of intentional dishonesty, misappropriation cases, fraud, stealing, serious criminal conduct and the like, we will not accept, as 'compelling extenuating circumstances,' anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the 'root cause' of the misconduct and that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the MRPC. Only if the circumstances are that compelling, will we even consider imposing less than the most severe sanction of disbarment in cases of stealing, dishonesty, fraudulent conduct, the intentional misappropriation of funds or other serious criminal conduct, whether occurring in the practice of law, or otherwise.

*Id.* at 413–14, 773 A.2d at 485. We explained further:

Upon reflection as a Court, in disciplinary matters, we will not in the future attempt to distinguish between degrees of intentional dishonesty based upon convictions, testimonials or other factors. Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character.

*Id.* at 418, 773 A.2d at 488.

**10.** Md. Rule 16–758(b)(2) allows Bar Counsel and Respondent to file with the Court "recommendations concerning the appropriate disposition" of such a case.

**11.** Respondent appeared at the 19 March 2001 and 11 September 2001 Inquiry Panel hearings and the 20 August 2002 hearing in the Circuit Court. This pattern of appearances, for the most part, informs our supposition that she may have acquiesced in Bar Counsel's sanction recommendation. This becomes more likely so because Respondent ultimately acknowledged her misconduct, expressed remorse, and made substantial restitution to her client.

protect her interests had she thought disbarment was "on the table," at least insofar as she may have been influenced by Bar Counsel's judgment as to what sanction was appropriate to pursue. We do not suggest that the Court lacks the authority to disbar Respondent in this matter nonetheless. Clearly Rule 16–759(c) and the nature of the Court's jurisdiction in attorney discipline matters, gives the Court the authority to order any lawful sanction it deems appropriate in a given case. The boundaries of the Court's discretion may not be redrawn, as a matter of law, by a respondent's choice not to respond to Bar Counsel's recommendation or not to appear at oral argument, or even by expressly acquiescing in Bar Counsel's recommendation of a lesser sanction than the Court may deem appropriate.

Our principal concern is that, on this record, Respondent's "severe mental illness" [12] may have affected her judgment as to the prudential course of conduct to be taken in view of the assumed exposure to the sanction she might be facing, based on Bar Counsel's recommendation. Indefinite suspension may be perceived by members of the Bar as granting slightly more purchase from which to seek re-admission, assuming rehabilitation, than disbarment. The relative professional stigma attached to indefinite suspension versus disbarment also may figure in a decision whether to oppose or acquiesce. Such reasoning in the mind of an attorney who has admitted her misconduct and continues to fight her related mental illness may seem reasonable. Respondent might have resisted disbarment had Bar Counsel sought its imposition. While Respondent is not to be commended for her lack of forethought in failing to grasp that the Court might not accept Bar Counsel's recommendation, or that it was not bound by that recommendation, we deem it a fairer outcome, under the

---

12. Her illness was conceded by Bar Counsel ("Petitioner does not contest Dr. Williamson's diagnosis of depression"). Recognition of this illness, according to our interpretation of Bar Counsel's explanation for its recommendation, influenced the choice of pursuing indefinite suspension rather than disbarment.

circumstances of this case, to adopt Bar Counsel's recommendation.

A word of warning to future respondents is in order. We shall not be hoisted on the horns of this type of dilemma in the future. Accordingly, with the publication of the opinion in this case, the Bar is advised that, henceforth, a failure to respond to Bar Counsel's recommended disposition and/or to appear at oral argument will not be considered as any level of mitigation in the sound exercise of our discretion as to what sanction is appropriate. The sanction in this case shall be an indefinite suspension which shall commence thirty days from the date of the filing of the Opinion in this case.[13]

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715.c., FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST MARY I. DUVALL.

Concurring Opinion by BELL, C.J., in which ELDRIDGE, J., joins.

Concurring Opinion by BELL, C.J., in which ELDRIDGE, J., joins.

The sanction imposed by the Court in this case is that recommended by the petitioner, the Attorney Grievance Commission, an indefinite suspension. That is the appropriate sanction for this case, I agree. I do not agree either with the reasons why the majority imposed it [1] or that the case ordi-

---

**13.** As indicated, while not seeking to fashion the terms of Respondent's possible readmission, Petitioner nevertheless asks the Court to apprise Respondent now of any known requirements that must be met before readmission. We decline to do so. We think it appropriate to leave to future determination whether Respondent becomes fit to resume the practice of law. Certainly, whether the mental illness persists that the hearing judge found will be an important consideration.

**1.** To be sure, relying on the findings of the hearing court with regard to mitigation and, like the hearing court, notwithstanding the Rule 8.4.d

narily would be governed by *Attorney Griev. Comm'n v. Vanderlinde*, 364 Md. 376, 773 A.2d 463 (2001). To be sure, I am fully cognizant of the pronouncements we made in *Vanderlinde*. Indeed, I do not disavow those pronouncements and, in fact, in an appropriate case, I not only would endorse them, but would willingly apply them. Quite simply, I do not believe the *Vanderlinde* rule applies to the facts *sub judice*. A case more on point and that I believe to be dispositive is *Attorney Griev. Comm'n v. Hayes*, 367 Md. 504, 789 A.2d 119 (2002).

Vanderlinde, although an attorney, was employed in a non-legal capacity with King's Contrivance Community Association. While so employed, she misappropriated $3,880.67 from the Community, which she used for her own purposes. She replaced the money before she left her employment with the Association. *Vanderlinde*, 364 Md. at 381, 773 A.2d at 465. Vanderlinde, who admitted the violations, was found to have

---

violation, the petitioner has recommended indefinite suspension, rather than disbarment. As we have seen, the respondent neither filed exceptions, nor, although notified of the petitioner's recommendation, appeared at the hearing in this Court to challenge that recommendation. It is conceivable that she believes indefinite suspension is, and thus accepts it as, the appropriate sanction. And, given the petitioner's recommendation, it is not unlikely that she believed that indefinite suspension was her maximum exposure. To that extent, I concur with the majority's reasoning. That is not a sufficient basis, in my view for the result; unless the sanction that results from the respondent's default is one that could be imposed were there to have been a contested hearing, it simply can not be imposed, not even in the interest of fairness. If, for example, the recommendation was a reprimand and the conduct, theft, the respondent's default would not in that case get the respondent a reprimand.

The majority recognizes that the respondent's " 'severe mental illness' may have affected her judgment as to the prudential course of conduct to be taken in view of the assumed exposure to the sanction she might be facing, based on Bar Counsel's recommendation," 373 Md. 493–94, 819 A.2d 350 (2003), and, in fact, credits as seeming to be reasonable "[s]uch reasoning in the mind of an attorney who has admitted her misconduct and continues to fight her related mental illness." *Id.* It is curious to me that it does not also recognize that the same mental illness, as to which there is no dispute either as to its existence or causal relationship to the misconduct, could negate the intentional nature of the conduct when, in this case, that seems to have been precisely what was found by the hearing court, judging from its mitigation findings.

violated Rules 8.4.a., 8.4.b., and 8.4.c. of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812. *Id.* at 381, 773 A.2d at 466. To avoid the severe sanction of disbarment, she offered by way of mitigation "the pressures of her life and the impairment of her mental faculties, including her periods of depression." *Id.* This Court rejected that defense. It then announced the rule that would govern future similar cases:

> "[I]n cases of intentional dishonesty, misappropriation cases, fraud, stealing, serious criminal conduct and the like, we will not accept, as 'compelling extenuating circumstances,' anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the 'root cause' of the misconduct and that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the MRPC. Only if the circumstances are that compelling, will we even consider imposing less than the most severe sanction of disbarment in cases of stealing, dishonesty, fraudulent conduct, the intentional misappropriation of funds or other serious criminal conduct, whether occurring in the practice of law, or otherwise."

*Id.* at 413–14, 773 A.2d at 485. The Court explained:

> "Upon reflection as a Court, in disciplinary matters, we will not in the future attempt to distinguish between degrees of intentional dishonesty based upon convictions, testimonials or other factors. Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character."

*Id.* at 418, 773 A.2d at 488.

In *Attorney Griev. Comm'n v. Lane,* 367 Md. 633, 790 A.2d 621(2002), the Court, speaking through Judge Cathell, the author of the *Vanderlinde* opinion, revisited the issue of the

effect of mitigation in the kind of cases *Vanderlinde* addressed. Agreeing with the respondent in the case that, in attorney grievance proceedings, rather than take a procrustean approach, the facts and circumstances, to include the mitigation involved, must be examined in each case, the Court confirmed that "[d]isbarment ordinarily should be the sanction for intentional dishonest conduct." *Id.* at 646, 790 A.2d at 628 (*quoting Vanderlinde,* 364 Md. at 418, 773 A.2d at 488). We acknowledged, however, that disbarment is not always the appropriate sanction "when there is misrepresentation involved, especially where misappropriation of money was not involved." To demonstrate the point, we relied on *Attorney Griev. Comm'n v. Harrington,* 367 Md. 36, 785 A.2d 1260 (2001), in which an indefinite suspension was imposed on an attorney, whose major transgression, except for one misrepresentation made to one client, was his lack of cooperation with the Attorney Grievance Commission.

> "We did not apply *Vanderlinde* as a bright-line rule, but applied the facts and circumstances of that case to determine the appropriate sanction. What *Vanderlinde* holds is that 'ordinarily' disbarment will be the appropriate sanction when dishonesty is involved, however, we must still examine the facts, circumstances, and mitigation in each case. In *Harrington,* there was one instance of a degree of misrepresentation. There was, however, no pattern of a course of deceitful conduct over an extensive period of time sufficient, in our view, to support a disbarment. The gravamen of the disciplinary proceeding was the attorney's lack of diligence and his lack of cooperation with bar counsel. There, we determined that the appropriate sanction was an indefinite suspension."

*Lane,* 367 Md. at 647, 790 A.2d at 628–29.

Hayes was charged with violation of Maryland Code (1989, 2000 Repl.Vol., 2002 Cum.Supp.) § 10–306 of the Business Occupations and Professions Article and Rules 1.15.a., 8.4.a.,[2]

---

2. Maryland Rule 8.4.a. prohibits a lawyer from "violat[ing] or attempt[ing] to violate the Rules of Professional Conduct, [or] knowingly

16–607, Commingling of Funds,[3] and 16–609, Prohibited Transactions.[4]  Rather than mount a defense on the merits, Hayes offered, as a compelling, extenuating circumstance, the attention deficit disorder from which he suffered and argued that "the acts to which he has readily admitted, while wrong and inexcusable, reflect no intentional fraud, deceit, or dishonesty." *Id.* at 511, 789 A.2d at 123.  The Commission recommended disbarment.  It argued in support of that sanction the

---

assist[ing] or induc[ing] another to do so, or do[ing] so through acts of another."

3.  Maryland Rule 16–607, captioned "Commingling of Funds," provides: "a.  General Prohibition.  An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be so deposited by section b. of this Rule.
"b.  Exceptions.
"1.  An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service charges, or minimum balance required by the financial institution to open or maintain the account, including those fees that cannot be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to Rule 16–610 b 1(D), or (B) enter into an agreement with the financial institution to have any fees or charges deducted from an operating account maintained by the attorney or law firm.  The attorney or law firm may deposit into an attorney trust account any funds expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client.
"2.  An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm.  The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.
"3.  Funds of a client or beneficial owner may be pooled and commingled in an attorney trust account with the funds held for other clients or beneficial owners."

4.  Maryland Rule 16–609, captioned, "Prohibited Transactions," provides:
"An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose.  An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer."

Court's "consistent and repeated admonition that '[m]isappropriation of funds by an attorney is an act infested with deceit and dishonesty and ordinarily will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction,' " *id.,* quoting *Attorney Griev. Comm'n v. Bakas,* 323 Md. 395, 403, 593 A.2d 1087, 1091 (1991) and relying on *Attorney Griev. Comm'n v. Bernstein,* 363 Md. 208, 226, 768 A.2d 607, 617 (2001); *Attorney Griev. Comm'n v. Tomaino,* 362 Md. 483, 498, 765 A.2d 653, 661 (2001); *Attorney Griev. Comm'n v. Sheridan,* 357 Md. 1, 27, 741 A.2d 1143, 1156 (1999), and that *Vanderlinde* required rejection of attention deficit disorder as a compelling extenuating circumstance. 367 Md. at 510, 789 A.2d at 123.

We opted for an indefinite suspension, with the right to apply for readmission after ninety (90) days. Explaining our decision, we said:

"In the case sub judice, there is neither a finding that the respondent violated a disciplinary rule necessarily implicating his honesty or integrity, nor a finding by the hearing judge that the respondent's actions were taken with a dishonest or fraudulent intent. Indeed, as the respondent points out, he was not even charged with violating Rule 8.4(c). Moreover, the findings that the hearing judge made with regard to mitigating factors are inconsistent with and, thus tend[ ] to negate, any dishonest or fraudulent intent. We hold, under these circumstances, the automatic disbarment rule for misappropriation does not apply, that this is not the kind of willful conduct to which the rule was directed or intended to reach. To hold otherwise would result in the mere doing of the act which constitutes the violation being dispositive, in effect irrebuttable, since the mental state of the respondent would be rendered irrelevant and certainly non-mitigating.

"Considering the purpose of disciplinary proceedings and the sanctions that flow from them, to protect the public, *Jeter,* 365 Md. at 289, 778 A.2d. at 396; *Bernstein,* 363 Md. at 226, 768 A.2d at 616–17; *Attorney Griev. Comm'n v.*

*Koven,* 361 Md. 337, 343, 761 A.2d 881, 884 (2000), the facts and circumstances of this case, *Attorney Griev. Comm'n v. Tolar,* 357 Md. 569, 585, 745 A.2d 1045, 1053 (2000), including the respondent's prior spotless record, *see Attorney Griev. Comm'n v. Franz,* 355 Md. 752, 762–63, 736 A.2d 339, 344 (1999); *Maryland State Bar Ass'n v. Phoebus,* 276 Md. 353, 362, 347 A.2d 556, 561 (1975), the respondent's candor and remorse,. and the hearing judge's finding that the respondent had no intent to defraud, we think the appropriate sanction is a period of suspension, rather than disbarment."

*Id.* at 519–20, 789 A.2d at 128–29.

In this case, to be sure, the respondent admitted, and the hearing court found, a violation of Rule 8.4.c., thus implicating dishonesty, fraud, deceit or misrepresentation. On the other hand, the hearing court found that the respondent had a severe mental illness that was diagnosed at about the time that she was retained by Ms. Yirsaw and, moreover, that the respondent "had little control over her impaired judgment and that it was a product of her brain disease." These findings are not disputed or challenged by the petitioner and, in fact, constitute the basis for the petitioner's indefinite suspension recommendation. It is also significant that that recommendation was made notwithstanding the petitioner's belief that the respondent exhibited a pattern of dishonesty. The hearing court's findings with respect to the respondent's mental illness thus undermine the Rule 8.4 violation; stated simply, they tend to negate the intentional nature of the respondent's conduct.

In addition, the hearing court found that the respondent was remorseful, not attempting to offer excuses and fully admitting her transgressions. Nor is there a finding in this case of "a pattern of a course of deceitful conduct over an extensive period of time." *Lane,* 367 Md. at 647, 790 A.2d at 629. This case is, therefore, more akin to *Hayes* and *Harrington* than it is to *Vanderlinde.* Accordingly, a sanction

similar to the sanction imposed in those cases is appropriate. That sanction in this case is an indefinite suspension.

Judge ELDRIDGE joins the views expressed herein.