863 A.2d 291

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Mary I. DUVALL.

Misc. AG No. 49, Sept. Term, 2003.

Court of Appeals of Maryland.

Dec. 10, 2004.

Melvin Hirshman, Bar Counsel and Raymond A. Hein, Assistant Bar Counsel for the Attorney Grievance Commission of Maryland, for petitioner.

No argument on behalf of the respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BELL, Chief Judge.

The Attorney Grievance Commission of Maryland, the petitioner, by Bar Counsel, acting pursuant to Maryland Rule 16–751,[1] filed a Petition For Disciplinary or Remedial Action against Mary I. DuVall, the respondent. The petition charged that the respondent violated Rules 1.4, Communication,[2] 1.15, Safekeeping Property,[3] 1.16, Declining or Terminating Repre-

---

1. Maryland Rule 16–751, as relevant, provides:

   "(a) *Commencement of disciplinary or remedial action.* (1) Upon approval
   of the Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

   *See* Rule 16–743, which specifically provides that "[t]he Commission may (1) approve the filing of a Petition for Disciplinary or Remedial Action."

2. Rule 1.4 provides:

   "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
   "(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

3. Rule 1.15 provides, as relevant:

   "(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.
   "(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by

sentation,[4] and 8.1, Bar Admission and Disciplinary Matters,[5] of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812.[6] The respondent was also charged with violating Maryland Code (1989, 2000 Replacement Volume) § 10–306 of the Business Occupations and Professions Article.[7]

We referred the case, pursuant to Rules 16–752(a),[8] to the Honorable William B. Spellbring, of the Circuit Court for

---

the client or third person, shall promptly render a full accounting regarding such property."

4. Rule 1.16 provides, as relevant:

\* \* \* \*

"(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law."

5. Rule 8.1 provides, as relevant:

"An applicant for admission or reinstatement to the bar or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

\* \* \* \*

"(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

6. The petitioner also charged that the respondent "assist[ed] a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law," in violation of Rule 5.5(b), but withdrew it during the evidentiary hearing.

7. "A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

8. Rule 16–752(a) provides:

"(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter

Prince George's County, for hearing pursuant to Rule 16–757(c).[9]  The respondent was not served personally, despite reasonable efforts to do so.  Consequently, service of process was made, pursuant to Maryland Rule 16–753, on Janet Moss, Administrator of the Client Protection Fund of the Bar of Maryland.  Thereafter, an order of default was entered against the respondent and a hearing date set.  Following the hearing, at which the respondent not appear or participate, the hearing court, "[h]aving considered the unrefuted averments of the Petition for Disciplinary or Remedial Action, along with evidence presented by the Petitioner," found facts by the clear and convincing standard and drew conclusions of law, as follows.

### Findings of Facts

"The Respondent was admitted to the Maryland Bar on December 10, 1981.  By an Opinion and Order of the Court of Appeals filed March 17, 2003, she was indefinitely suspended from the practice of law in Maryland, effective thirty days after the filing of the opinion.  *Attorney Grievance Commission v. Duvall,* 373 Md. 482, 819 A.2d 343 (2003).  The Respondent has not petitioned for reinstatement since her indefinite suspension took effect on April 16, 2003.

"The legal representation which is the subject of the disciplinary complaint now before the court began several years prior to the commencement of the Respondent's indefinite suspension.  In August, 1996, Robert Ravenscroft retained the

---

a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

**9.**   Maryland Rule 16–757(c) provides:

"(c) Findings and conclusions.  The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law.  If dictated into the record, the statement shall be promptly transcribed.  Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing.  The clerk shall mail a copy of the statement to each party."

Respondent to provide legal advice and services pertaining to the placement of Mr. Ravenscroft's sister, Leah Ravenscroft, in the National Lutheran Home for the Aged in Rockville, Maryland. At the time of Mr. Ravenscroft's initial contact with the Respondent, the Respondent maintained an office for the practice of law in College Park, Maryland.

"On August 27, 1996, Mr. Ravenscroft gave the Respondent a personal check in the amount of $1,700.00, drawn on a checking account held in the name of Leah Ravenscroft. The memo notation on the check indicated that $200.00 was to be applied toward the "costs" and $1,500.00 was for "fees." The $1,500.00 portion designated for fees was an advance retainer to be earned by the Respondent at a billing rate of $125.00 per hour. The Respondent endorsed the $1,700.00 check "for deposit only." Although the back of the negotiated check does not reflect whether the deposit was made to an attorney trust account, there is no question that the Respondent received the funds.

"Initially, the legal action suggested to Robert Ravenscroft by the Respondent was to petition for a "conservatorship" of Leah Ravenscroft's affairs. It was later decided that such action was not necessary, and that the Respondent instead prepared a Power of Attorney granting Robert Ravenscroft authority to handle Leah Ravenscroft's affairs.

"In the course of providing representation, the Respondent sent Mr. Ravenscroft two billing statements. The first, dated September 13, 1996, identified legal services rendered through that date and contained an entry stating that $431.25 had been taken as a payment from the Respondent's escrow account for professional services rendered. The second billing statement, dated May 2, 1997, identified additional legal services through that date, including the preparation of a Last Will and Testament for Leah Ravenscroft, and contained an entry stating that $171.25 had been taken as a "payment from account" for professional services rendered. The second billing statement reflected that as of May 2, 1997, the Respondent was holding a balance of client funds in the amount of $1,097.50.

"In March 1999, Leah Ravenscroft was accepted as a resident at the National Lutheran Home in Rockville. Robert Ravenscroft testified in this proceeding that the only additional professional service rendered by the Respondent after May 2, 1997 was to prepare a real Estate Power of Attorney in August 1999 related to the sale of real property owned by Leah Ravenscroft in the District of Columbia. The Respondent never billed Mr. Ravenscroft for the preparation of that document.

"By a letter dated August 1, 2001, sent to the Respondent's office address in College Park, Mr. Ravenscroft requested in writing that the Respondent review her records and refund the balance of client funds due to Leah Ravenscroft. The Respondent did not respond in any manner to Mr. Ravenscroft's letter. At various times after August 2001, Mr. Ravenscroft attempted to reach the Respondent by telephone but was unsuccessful. On January 3, 2003, he learned that the respondent's office phone number had been disconnected.

"In a letter dated January 6, 2003, Mr. Ravenscroft wrote to the Attorney Grievance Commission to report the Respondent's actions and his inability to contact her. By a letter to the Respondent dated January 17, 2003, mailed to the Respondent's home address in Greenbelt, Maryland, as provided by the Client Protection Fund, Bar Counsel forwarded Mr. Ravenscroft's complaint and requested that the Respondent respond in writing to that complaint within ten days. The Respondent did not respond as requested.

"On February 5, 2003, Bar Counsel sent the Respondent a second letter asking her to respond to Mr. Ravenscroft's complaint by February 14, 2003. The original of that letter was sent to the Respondent's home address by certified mail. A copy was mailed by regular first class mail. The certified mail envelope was returned by the U.S. Postal Service with a sticker providing a Post Office Box number in College Park. The envelope sent by first class mail was not returned to the office of the Attorney Grievance Commission.

"The Respondent has not responded to Bar Counsel's lawful demands for information in response to Mr. Ravenscroft's complaint. Such requests were made before the commencement of the Respondent's indefinite suspension.

"The Respondent has not accounted for the balance of Leah Ravenscroft's advance retainer, nor has she refunded the unearned client funds belonging to Leah Ravenscroft.

## Conclusions of Law

"By failing to respond to Robert Ravenscroft's request for an accounting of the retainer paid on behalf of Leah Ravenscroft and not keeping him informed as to the status of such funds, the Respondent violated Maryland Rule of Professional Conduct 1.4(a), dealing with communication. The Respondent's failure to hold the unearned balance of the Ravenscroft retainer separate from her own property after May 2, 1997 may reasonably be inferred from the evidence presented. Such conduct violated Rule 1.15(a) of the Maryland Rules of Professional Conduct. The Respondent also violated Rules 1.15(b) and 1.16(d) when she failed to promptly deliver the advance payment of fee that had not been earned to client, Robert Ravenscroft, upon the conclusion of any active representation.

"The unearned portion of the Ravenscroft retainer held by the Respondent as of May 2, 1997 constituted "trust money" as defined in the Maryland Code, Business Occupations and Professions Article, § 10–301(d). As trust money, the balance of $ 1, 097.50 should have been maintained in an attorney trust account until such funds were earned by the Respondent as legal fees, expended as costs associated with the representation or refunded to the client upon conclusion of the representation. This court concludes that at some point after May 2, 1997, the Respondent no longer maintained the unearned balance of $ 1, 097.50 in trust and further concludes that she used such funds, which belonged to Leah Ravenscroft, for an unauthorized purpose in violation of § 10–306 of the Business Occupations and Professions Article.

"Finally, the Respondent violated Rule 8.1(b) of the Rules of Professional Conduct by knowingly failing to respond to lawful demands for information from a disciplinary authority when ignored Bar Counsel's letter requesting a response to Mr. Ravenscroft's complaint."

As indicated, the respondent did not participate in the proceedings. The petitioner did not file any exceptions to the findings and conclusions of the hearing court. It did, however, make a recommendation for sanction, that the respondent be disbarred from the practice of law. In support of the recommendation, the petitioner emphasizes that the respondent as found by the hearing court to have "committed multiple violations of the Rules of Professional Conduct," including failing to account for the unearned portion of a retainer, failing, despite being requested to do so to refund that unearned portion to the client and using those funds, which constituted trust funds, for a purpose other than that for which it was entrusted to the respondent. The petitioner also directs our attention to the fact that the respondent has previously been disciplined and, significantly,

"While the previous disciplinary proceeding was still pending before the Court in early 2003, Bar Counsel received the complaint that is the subject of the current proceeding. Prior to her suspension, the Respondent ignored Bar Counsel's efforts to obtain information in response to the complaint filed by Robert Ravenscroft. She also did not respond at any stage of the subsequent disciplinary process."

It found it important that, unlike the current proceedings, in which the respondent did not participate at all, in the prior proceeding, the respondent participated, offering some explanation for her misconduct, that, at the time, her judgment was impaired by the depression, from which she was suffering, and refunded the unearned fee to the complaining client. The petitioner concludes:

"Given her prior experience in the disciplinary system, the Respondent, if she had any interest in regaining her eligibility to practice law at some point in the future, should have

recognized the importance of responding to Bar Counsel and of answering the formal disciplinary charges related to Mr. Ravenscroft's complaint. *See Attorney Grievance Commission v. Powell,* 369 Md. 462, 475, 800 A.2d 782, 790 (2002) ("After a disciplinary action, this Court expects a renewed commitment to professional standards and ethical conduct."). Considering her prior discipline history, the Respondent's failure to respond to Mr. Ravenscroft's complaint and her apparent conversion of client funds (the unearned retainer balance) provide sufficient grounds to impose the ultimate sanction of disbarment."

The petitioner might also have pointed out that, in addition to some of the same violations found in this case, the earlier proceedings involved additional violations, at least one of which was more serious; the respondent in the earlier case was found to have violated Rules of Professional conduct 1.15(a) and (b), 1.16(d), 8.1(a) and (b), and 8.4(c) and Maryland Code (2000 Repl.Vol., 2002 Suppl.) Business Occupations and Professions Article, § 10–306. Pursuant to Rule 8.4(c), the respondent was accused of, and found by the hearing court to have, engaged "in conduct involving dishonesty, fraud, deceit or misrepresentation."

In the prior case, *Attorney Grievance Commission v. Duvall,* 373 Md. 482, 819 A.2d 343 (2003), although concerned about what it characterized as the respondent's "pattern of dishonesty," *Id.* at 489, 819 A.2d at 347, the petitioner recommended as the appropriate sanction that the respondent be indefinitely suspended from the practice of law.[10] *Id.* at 489, 819 A.2d at 347. The respondent did not appear, in that case, at the hearing in this Court. Nevertheless, notwithstanding

---

10. The recommendation, based on a psychiatric report diagnosing the respondent as suffering from depression, which was causally related to the respondent's misconduct, a diagnosis the petitioner did not contest, was made notwithstanding the petitioner's unhappiness with the timing of the submission of the report, *Attorney Grievance Commission v. Duvall,* 373 Md. 482, 489, 819 A.2d 343, 347 (2003); the report was not produced until the hearing in the Circuit Court. *Id.* at 486, 819 A.2d at 345.

some concern that the recommended sanction was not sufficient to protect the public, the majority of the Court accepted the petitioner's recommendation. Having observed, citing *Attorney Grievance Commission v. Vanderlinde,* 364 Md. 376, 773 A.2d 463 (2001), that "[o]rdinarily the type of conduct engaged in by Respondent and which resulted in the violations of the Maryland Rules of Professional Conduct found here would result in disbarment," *Attorney Grievance Commission v. Duvall,* 373 Md. at 490, 819 A.2d at 348, the Court explained:

"We impose an indefinite suspension in the present case *solely* because: (1) Bar Counsel, in his written Recommendation for Sanction filed in this matter on 2 October 2002 (before oral argument), proposed indefinite suspension as the appropriate sanction; ... (2) Respondent neither filed a contrary recommendation as to sanction nor appeared at oral argument before this Court; (3) Respondent may have been influenced by, or even agreed with, Bar Counsel's recommendation as to sanction and, having nothing to add, elected not to respond or appear; ... and, (4) Respondent might have acted differently to protect her interests had she thought disbarment was "on the table," at least insofar as she may have been influenced by Bar Counsel's judgment as to what sanction was appropriate to pursue. We do not suggest that the Court lacks the authority to disbar Respondent in this matter nonetheless. Clearly Rule 16–759(c) and the nature of the Court's jurisdiction in attorney discipline matters, gives the Court the authority to order any lawful sanction it deems appropriate in a given case. The boundaries of the Court's discretion may not be redrawn, as a matter of law, by a respondent's choice not to respond to Bar Counsel's recommendation or not to appear at oral argument, or even by expressly acquiescing in Bar Counsel's recommendation of a lesser sanction than the Court may deem appropriate.

"Our principal concern is that, on this record, Respondent's "severe mental illness" ... may have affected her judgment as to the prudential course of conduct to be taken

in view of the assumed exposure to the sanction she might be facing, based on Bar Counsel's recommendation. Indefinite suspension may be perceived by members of the Bar as granting slightly more purchase from which to seek readmission, assuming rehabilitation, than disbarment. The relative professional stigma attached to indefinite suspension versus disbarment also may figure in a decision whether to oppose or acquiesce. Such reasoning in the mind of an attorney who has admitted her misconduct and continues to fight her related mental illness may seem reasonable. Respondent might have resisted disbarment had Bar Counsel sought its imposition. While Respondent is not to be commended for her lack of forethought in failing to grasp that the Court might not accept Bar Counsel's recommendation, or that it was not bound by that recommendation, we deem it a fairer outcome, under the circumstances of this case, to adopt Bar Counsel's recommendation."

*Id.* at 492, 819 A.2d at 349. (footnotes omitted).

In one of the omitted footnotes, the Court noted the respondent's pattern of appearing at the Inquiry Panel hearings as evidencing the plausibility of the scenario we postulated. *Id.* at 493 n. 12, 819 A.2d at 349 n. 12. The Court then cautioned that, "henceforth, a failure to respond to Bar Counsel's recommended disposition and/or to appear at oral argument will not be considered as any level of mitigation in the sound exercise of our discretion as to what sanction is appropriate." *Id.* at 494, 819 A.2d at 350.

We accept the petitioner's recommendation and order the respondent's disbarment.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715.c., FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST MARY I. DUVALL.