919 A.2d 660

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Carol Long McCULLOCH.**

**Misc. Docket (Subtitle AG) No. 82, Sept. Term, 2005.**

Court of Appeals of Maryland.

March 19, 2007.

Fletcher P. Thompson, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Atty. Grievance Com'n), for petitioner.

Carol Long McCulloch, Sykesville, for respondent.

Argued before BELL, C.J., RAKER, WILNER *,
CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BELL, C.J.

Bar counsel, acting on behalf, and with the approval, of the petitioner, the Attorney Grievance Commission of Maryland, filed in this Court, pursuant to Maryland Rule 16–751,[1] a Petition for Disciplinary or Remedial Action charging the respondent, Carol Long McCulloch, with violations of various of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812, namely, Rules 1.1, Competence,[2] 1.2, Scope of Representation,[3] 1.3, Diligence,[4] 1.4, Communication,[5]

---

* Wilner, J., now retired, participated in the hearing and conferencing of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Maryland Rule 16–751, as relevant, provides:
   "(a) *Commencement of disciplinary or remedial action.* (1) Upon approval of Commission. Upon approval or direction of the Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

2. Rule 1.1 provides:
   "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

3. Rule 1.2 provides, as relevant:
   "(a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify."

4. Pursuant to that Rule "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

5. Rule 1.4, as pertinent, provides:
   "(a) A lawyer shall:
   \*      \*      \*      \*      \*      \*

1.5, Fees,[6] 1.15, Safekeeping Property,[7] 1.16, Declining or Terminating Representation,[8] 8.1, Bar Admission and Disci-

"(2) keep [a] client reasonably informed about the status of [a] matter; [and]

"(3) promptly comply with reasonable requests for information.

"(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

**6.** Rule 1.5 provides, as relevant:

"(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3) the fee customarily charged in the locality for similar legal services;

"(4) the amount involved and the results obtained;

"(5) the time limitations imposed by the client or by the circumstances;

"(6) the nature and length of the professional relationship with the client;

"(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) whether the fee is fixed or contingent."

**7.** Maryland Rule 1.15 provides, in pertinent part:

"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

"(b) A lawyer may deposit the lawyer's own funds in a client trust account for the sole purpose of paying bank service charges on that account, but only in an amount necessary for the purpose.

"(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred."

**8.** As relevant, Rule 1.16 provides:

plinary Matters,[9] 8.4, Misconduct,[10] and Maryland Rule 16–604, Trust Account Required Deposits.[11] The petition also alleged that the respondent violated Maryland Code (2004, 2006 Cum.Supp.) §§ 10–304, Deposit of trust money,[12] and 10–

---

"(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law."

9. Pertinently, Rule 8.1 provides:
"An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
"(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

10. Rule 8.4, as relevant, provides:
"It is professional misconduct for a lawyer to:
"(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
"(d) engage in conduct that is prejudicial to the administration of justice[.]"

11. Maryland Rule 16–604 provides:
"Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person."

12. Maryland Code (2004, 2006 Cum.Supp.) § 10–304 of the Business Occupations and Professions Article provides:
"(a) *General requirement.* Except as provided in subsection (b) of this section, a lawyer expeditiously shall deposit trust money into an attorney trust account.

306, Misuse of trust money,[13] of the Business Occupations and Professions Article.[14]

We referred the case, pursuant to Rules 16–752(a),[15] to the Honorable Thomas F. Stansfield, of the Circuit Court for Carroll County, for hearing pursuant to Rule 16–757(c).[16] After a hearing, at which the respondent appeared and participated, the court found the following facts by clear and convincing evidence.

The respondent was retained by Jeffrey A. Connelly, the complainant, to represent him in his pending divorce action.

---

"(b) *Exceptions—Direction of court.* Subsection (a) of this section does not apply if there is a court order to the contrary.
"(c) *Same—Real estate transaction.* Notwithstanding subsection (a) of this section or any other law, a lawyer may disburse, at settlement in a real estate transaction, trust money that the lawyer receives in the transaction."

13. Section 10–306 proscribes a lawyer's "use [of] trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

14. Initially, the respondent was not charged with any violations related to her trust account; they were added by petitioner, without objection, several months after the initial petition was filed. Subsequently, the petitioner abandoned the allegations related to Rules 1.1, 1.2, 1.3 and 1.5.

15. Rule 16–752(a) provides:
"(a) *Order.* Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

16. Maryland Rule 16–757(c) provides:
"(c) *Findings and conclusions.* The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party."

The retainer agreement provided for the respondent to be paid at the rate of $180.00 an hour for her services and an initial retainer of $2,500.00, against which the respondent's hourly rate billing would be charged. The complainant paid the retainer by check. On the same day she received the retainer check, the respondent deposited that check in her operating account, even though not all of the retainer had then been earned. Subsequently, beginning about two weeks after the retainer was paid, the complainant began a series of e-mails to the respondent, urging her to "move forward on his case." Despite these e-mail urgings, it was not until July 16, 2004, about a month later, that the respondent informed the complainant that "the documents required to file his divorce action were in progress." [17] Thereafter, by e-mail dated August 5, 2004, the complainant "discharged" the respondent, indicating that he would "seek other counsel" and "requesting a *complete* refund to be paid to him by August 12, 2004." Despite sending the complainant a letter, dated the same day, August 5, containing copies of a letter and the original Complaint she had prepared and a bill showing a credit of $ 1,474.00 due the complainant, sans check, on August 7, 2004, the respondent sent the complainant an e-mail in which she asked that he reconsider his decision to discharge her. Other than an inconclusive exchange of e-mails—the complainant stating his "desperate" need for the refund and the respondent conceding that he "would be better off with someone who

---

17. It was disputed whether the delay in commencing work on the complainant's case was due to inattention, as the complainant alleged, or to the complainant's failure to provide all of the information necessary to prepare the pleadings, as the respondent alleged. The respondent also contended that, in a telephone conversation, the complainant asked her to delay filing pleadings pending receipt of a proposal from his wife's counsel. Resolving the conflict, the hearing court observed:

"Respondent quite correctly points out that the Complainant did not testify in this matter, nor was a deposition from him admitted in evidence. Accordingly, the only evidence we have concerning the conversations between the Complainant and Respondent during this time frame are provided by the testimony of the Respondent, who contends there was an absence of complete information from which she could have moved forward with his case."

would give him the same consideration he had given" her— almost three months passed before there was any other communication with the respondent with respect to the case.[18]

The complainant filed his complaint with the petitioner, which complaint bar counsel forwarded, by letter dated November 1, 2004, to the respondent, with the request that she respond to it within 15 days. The respondent did not respond to that letter or to the two subsequent letters, one sent by certified mail, made necessary by that failure, until March 30, 2005. By that time, in addition to the bar counsel letters just mentioned, the complainant had written directly to the respondent, seeking a refund of the $1,474.00 the respondent had advised him he was due, and bar counsel had written yet another letter to the respondent, this time, in addition, seeking copies of her trust account and her client cards. When the respondent responded, she also included with her response to the complaint an amended bill for the client. According to that bill, the credit due the complainant was $880.00, some $594.00 less than reflected on the prior bill. The respondent refunded that amount to the complainant "directly from her trust account," after she settled an unrelated personal injury case, as to which she received a fee of $960.00. The respondent's operating account balance in June 2004 was a negative one, and it remained a negative balance "at the time a refund of at least Eight Hundred Eighty Dollars ($880.00) was clearly due the Complainant."

From the foregoing facts, the hearing court concluded, by clear and convincing evidence, that the respondent violated Rules 1.4(a)(3), 1.15(a), 1.16(d), 8.4(b), (c) and (d) of the Rules

---

**18.** The complainant purported to send the respondent an e-mail dated October 22, 2004, "advising the Respondent that he had reconsidered his decision to terminate her services and asking her to continue her representation of him, and further stating that if she did not wish to do so, the remaining balance of his retainer with her was to be sent to him at her soonest convenience." In the amended petition, the petitioner conceded that the "complainant sent this e-mail to his own e-mail address and respondent did not receive it," at least not at that time.

of Professional Conduct, Rule 16–604 and §§ 10–304 and 10–306 of the Business Occupations and Professions Article.

The Rule 1.4(a)(3) and the Rule 8.1(b) violations relate to the respondent's failure to respond, to bar counsel and to the complainant. While its conclusion with respect to bar counsel and Rule 8.1 is clear and straight-forward, the hearing court explained, as to the complainant's request and Rule 1.4(a)(3):

> "[T]he gravamen of [bar counsel's] contention is that if the e-mail were included with a letter of November 1, 2004, which the Respondent admitted she had not read, and even after becoming aware of it on December 1, 2004, did not respond to it, the Rule requires some type of response when a client asks that you either continue the representation and presumably actively pursue the matter for which the attorney had been engaged, or refund the retainer. The Court believes that there is an inherent requirement in this Rule that such a response be reasonably prompt. While facts and circumstances may justify days or even weeks in responding, certainly the length of time involved here is sufficient to find a violation of this Rule by clear and convincing evidence."

With regard to the Rules 1.15 and 16–604 and § 10–304 violations, it was clear to the hearing court that the respondent received the retainer, deposited the unearned portion in her operating account rather than her escrow account and, "[c]ompounding the problem," did not provide an explanation for not timely depositing it in escrow. In addition, the hearing court observed that "a review of the Respondent's bank records clearly indicates that she commingled the Complainant's unearned retainer with her own funds, and she exhausted the same prior to having performed the work she promised to do for him." It did not find credible, and therefore rejected, the respondent's explanation for not depositing the retainer in her escrow account, "to verify that the check [was] good, presumably before she would continue to perform work on behalf of the Complainant."

Acknowledging that the respondent eventually refunded the unearned fee, the hearing court concluded that Rule 1.16(d) was violated nonetheless when she did not do so promptly. Addressing the discrepancy between the two bills that the respondent generated, each showing a different credit due the complainant, the court said:

"Although the difference in the two statements provided to the Complainant and the difference between the credit balance amounts could raise a question of why there was a revision of the bill or how some item was not included in calculating the credit balance due the Complainant, we are left with the fact that the Respondent testified concerning problems obtaining bookkeeping and assistance services during that period of time and explained the error that resulted in this change. Further, the Complainant accepted the check sent by the Respondent in the lower amount, presumably in full payment of his refund."

With regard to the Rule 8.4 violations and the § 10–306 violation, the hearing court concluded:

"There is no question that the Respondent, after having deposited the Complainant's retainer into her operating account, spent it. She clearly had to secure funds from another matter some six (6) months later in order to have sufficient funds from which to send a refund to the Complainant. There is no other inference to be drawn from the evidence other than the Respondent spent the funds improperly for personal purposes."

On the other hand, it rejected the petitioner's argument that the respondent had committed theft, explaining:

"There was a dispute as to the amount of the refund due until the Complainant accepted the refund check tendered by Respondent. While the Court feels that these rules and statutes [sic] have been violated by clear and convincing evidence, the Court does not find that these actions resulted from the requisite criminal intent to constitute Theft."

The hearing court also commented on "issues in the Respondent's testimony," as follows:

"In the first place, she testified that essentially she had trouble engaging adequate or any assistance with the book-keeping functions in her office, and was further plagued with extensive problems surrounding the death of her friend, who also functioned as an investigator. Tragically, it appears that that death occurred under very suspicious circumstances, and while we are not privileged to the criminal nature of these circumstances, the bottom line is that the Court finds no evidence to dispute the Respondent's testimony in this regard. However, the practice of law, especially in the Family Law area, most often requires an attorney to prioritize the needs of the various clients in order to attend to all matters related to all of the clients in the attorney's practice. That is very demanding at times and is often easier said than done, but errors in time frames for response, refunds, or other matters of this type, certainly should not be allowed to drift into the excessive time frame outlined in this case, not only for the efficient handling of clients' matters, but also for the proper functioning of a law practice. While there may be considerations of the mitigating factors in this case by the Court of Appeals, this Court does not see any of the arguments advanced by the Respondent in her proposed Findings of Fact and Conclusions of Law as sufficient to rise to the level that the Findings of this Court made by clear and convincing evidence are correct."

■ Neither the petitioner nor the respondent took exceptions to the findings and conclusions of the hearing court. The petitioner, however, did file Petitioner's Exceptions to Findings of Fact and Recommendation for Sanction, in which it recommended that the respondent be disbarred. It relies on *Attorney Grievance Comm'n v. Vanderlinde*, 364 Md. 376, 773 A.2d 463 (2001); *Attorney Grievance Comm'n v. Blum*, 373 Md. 275, 818 A.2d 219 (2003); *Attorney Grievance Comm'n v. Duvall*, 384 Md. 234, 863 A.2d 291 (2004); *Attorney Grievance Comm'n v. Roberts*, 394 Md. 137, 904 A.2d 557 (2006).

In *Vanderlinde,* we reiterated and reemphasized the well settled principle that

"Misappropriation of funds by an attorney is an act infected with deceit and dishonesty and ordinarily will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction."

*Vanderlinde,* 364 Md. at 406, 773 A.2d at 480, *quoting Attorney Grievance Comm'n v. Bakas,* 323 Md. 395, 403, 593 A.2d 1087, 1091 (1991), which, in turn, cited *Attorney Grievance Comm'n v. Ezrin,* 312 Md. 603, 608–09, 541 A.2d 966, 969 (1988). We then stated, emphatically:

"Accordingly, we reiterate once again the position we announced in *Kenney. Moreover, we expound upon it by holding that, in cases of intentional dishonesty, misappropriation cases, fraud, stealing, serious criminal conduct and the like, we will not accept, as 'compelling extenuating circumstances,' anything less than the most serious and utterly debilitating mental or physical health conditions, arising from any source that is the 'root cause' of the misconduct and* that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the MRPC. Only if the circumstances are that compelling, will we even consider imposing less than the most severe sanction of disbarment in cases of stealing, dishonesty, fraudulent conduct, the intentional misappropriation of funds or other serious criminal conduct, whether occurring in the practice of law, or otherwise."

*Vanderlinde,* 364 Md. at 413–14, 773 A.2d at 485. Underlying the rule is the recognition that "[u]nlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse." *Id.* at 418, 773 A.2d at 488. Thus, *Vanderlinde* and its progeny make clear that "[d]isbarment ordinarily should be the sanction for intentional dishonest conduct." *Id. See Attorney Grievance Comm'n v. Pennington,* 387 Md. 565, 597, 876 A.2d

642, 661 (2005); *Attorney Grievance Comm'n v. Lane,* 367 Md. 633, 646, 790 A.2d 621, 628 (2002).

In *Vanderlinde,* the respondent attorney, as she freely acknowledged, had "on many occasions over a period of time [ ] misappropriated money of the Association [her employer] for her own use." 364 Md. at 381, 773 A.2d at 466. Therefore, there simply was no issue of the intention with which she acted; she offered only mitigation, "the pressures of her life and the impairment of her mental faculties, including her periods of depression," *id.,* hoping thereby to moderate the sanction. This Court rejected that mitigation. *Id.* at 414–15, 773 A.2d at 485–86.

Blum was found to have violated, in the representation of several clients, numerous Rules and Rules of Professional Conduct, including, *inter alia,* Rule 8.4(c), and statutes including § 10–306, involving client funds and misrepresentation. Among the misconduct sanctioned were the deposit of unearned retainers in his operating account, the use of those unearned fees before they were earned and the failure to return the unearned portion of a fee to a client. There were no mitigating facts offered or found. 373 Md. at 304, 818 A.2d at 236. In summarizing the basis for the disbarment sanction, the Court said:

> "Blum refused to return Ms. Dianat's money to her when she terminated his representation, and then altered a check, which he provided to her new attorney, in order to create the illusion that he had paid her. Blum also took funds that clients had given to him in anticipation of future services and deposited such funds into his personal and operating accounts for his own benefit, before he had earned those funds. Behavior such as this, in and of itself, 'in the absence of mitigating circumstances, ordinarily warrants disbarment.'"

373 Md. at 303, 818 A.2d at 236.

In *Duvall,* the respondent attorney had been "found by the hearing court to have 'committed multiple violations of the Rules of Professional Conduct,' including failing to account for

the unearned portion of a retainer, failing, despite being requested to do so to refund that unearned portion to the client and using those funds, which constituted trust funds, for a purpose other than that for which it was entrusted to the respondent," and previously had been disciplined. 384 Md. at 241, 863 A.2d at 295. We determined that disbarment was the appropriate sanction and, so, ordered her disbarment.

The petitioner argues, emphasizing the hearing court's factual findings and conclusions, especially "that Respondent's conduct violated Rule 8.4(c)," and the absence of any finding of extenuating circumstances, that *Vanderlinde* and its progeny control the disposition of this case. It submits:

"The most serious aspect of this matter is that Respondent violated her fiduciary responsibility to Complainant by spending funds that were given to her in trust for her personal purposes at a time when those funds were the property of the client. As a result of her dishonesty, she did not have funds available to give the complainant which her own billings stated she owed him. Disbarment is the appropriate sanction for this misconduct."

Maintaining that there have been no compelling extenuating circumstances shown in this case—in fact, the hearing court went to great pains to make that point—, and, although conceding that the conduct *sub judice* is less egregious than either *Blum* or *Duvall*, the petitioner emphasizes nevertheless the seriousness of the respondent's violations, urging that that alone warrants disbarment. It adds and reiterates:

"Respondent abused the trust the client had placed in her by spending money that belonged to him on herself. She compounded this wrongdoing by refusing to refund Complainant the money she admitted she owed him for almost eight months after his first request for a refund, and by failing to answer Bar Counsel's request for information about this matter for almost five months."

As we have seen, the respondent did not take any exceptions. In fact, she expressly conceded that, although she did not agree with all of the findings made by the hearing court,

none of the findings was clearly erroneous. Moreover, the respondent was not reluctant to admit that she "did two very wrong things" and that "[she] expect[ed] there to be consequences for those wrong things that [she] did." One of those "wrong things" that she did and which she readily admitted was depositing into her operating account a retainer check when not all of the amount represented by the check had not been earned. Nor did she offer any excuses or try to explain those wrong things away. To be sure, the respondent indicated that she had reasons for what she did, but she made clear that they were not, nor intended to be, excuses.

Rather than merely accept a sanction, which she said she was tempted to do, the respondent, professing a desire to continue a 28 year career representing people in such matters as domestic violence, notwithstanding the stressors involved, asks the Court to impose a sanction other than disbarment. Noting that the Peer Review Committee recommended dismissal, which she believes to be insufficient, and finding a distinction between her misconduct and that in the cases on which the petitioner relies, she believes that something short of disbarment, although she would not be more specific, is appropriate.

We are inclined to the view of the respondent with regard to the sanction. In urging the hearing court to find that the respondent violated Rule 8.4(b), (c) and (d), the petitioner argued that because "misappropriation of funds held in escrow constitutes the crime of Theft," the respondent committed the crime of theft. Although the hearing court found that the respondent's conduct did violate each of the subsections of Rule 8.4 charged and even referred to the respondent's spending of the unearned portion of the retainer as "basic misappropriation," it very clearly and emphatically found that "these actions [did not] result[ ] from the requisite criminal intent to constitute Theft." The petitioner interprets the hearing court's affirmation that the rules and statute had been violated by clear and convincing evidence to be dispositive of the sanction, it being a finding that the conduct was dishonest and deceitful. The respondent takes the opposite position, main-

taining that her argument of lack of intent carried the day. The finding is at best ambiguous, indicating that, at the least, the hearing court had some doubt as to the level of the respondent's culpability. Disbarment should not rest on such a finding.

Moreover, as indicated, the respondent has shown remorse: she expressly did not except to the findings or conclusions of the hearing court and, indeed, conceded their adequacy. She also accepted responsibility for the misconduct and did not seek to minimize or otherwise avoid consequences that might flow from it. We have recognized that "[f]rom the respondent's remorse . . ., that a repeat of the misconduct was unlikely, admittedly not mentioned, could have been inferred." *Attorney Grievance Comm'n v. Kovacic,* 389 Md. 233, 239, 884 A.2d 673, 676 (2005). Finally, the respondent has no prior grievance history. Bearing in mind the purpose of attorney discipline, which we have stated repeatedly, to protect the public and not to punish the erring attorney, *see Attorney Grievance Comm'n v. Rees,* 396 Md. 248, 254, 913 A.2d 68, 72 (2006); *Attorney Grievance Comm'n v. Wallace,* 368 Md. 277, 289, 793 A.2d 535, 542 (2002); *Attorney Grievance Comm'n v. Hamby,* 322 Md. 606, 611, 589 A.2d 53, 56 (1991); *Attorney Grievance Comm'n v. Myers,* 302 Md. 571, 580, 490 A.2d 231, 236 (1985); *Attorney Grievance Comm'n v. Lockhart,* 285 Md. 586, 597, 403 A.2d 1241, 1247 (1979), we are satisfied that suspending the respondent indefinitely is the appropriate sanction.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST CAROL LONG McCULLOCH.