50 A.3d 1187
ATTORNEY GRIEVANCE COMMISSION OF MARYLAND
v.
**Godson M. NNAKA.**
**Misc. Docket AG No. 52, Sept. Term, 2008.**
Court of Appeals of Maryland.
Aug. 21, 2012.

88

Marianne J. Lee, Asst. Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

No argument on behalf of Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY,* ADKINS and BARBERA, JJ.

PER CURIAM.

Petitioner Attorney Grievance Commission of Maryland ("AGC"), acting through Bar Counsel, filed a Petition for Disciplinary or Remedial Action ("Petition") against Respondent Godson M. Nnaka. Bar Counsel charged Nnaka with violating the Maryland Lawyer's Rules of Professional Conduct ("MLRPC") in his capacity as representative of two couples, the Dowuonas and the Shupes, in two matters. Specifically, Bar Counsel alleged that Nnaka violated the following rules: (1) Rule 1.1 (Competence);[1] (2) Rule 1.3 (Diligence);[2] (3) Rule 1.4 (Communication);[3] (4) Rule 8.1 (Bar

---

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court, but did not participate in the decision or adoption of this opinion.

1. Rule 1.1 provides:

> A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

2. Rule 1.3 provides:

Admission and Disciplinary Matters);[4] and (5) Rule 8.4(c)-(d) (Misconduct).[5]

Following a hearing before the Circuit Court for Baltimore County, Judge Robert N. Dugan issued findings of fact and conclusions of law, in which he found by clear and convincing evidence that Nnaka violated MLRPC Rules 1. 3, 1.4(a), 1.4(b), 8.1(b), 8.4(c), and 8.4(d).

---

A lawyer shall act with reasonable diligence and promptness in representing a client.

3. Rule 1.4 provides:
   (a) A lawyer shall:
   (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
   (2) keep the client reasonably informed about the status of the matter;
   (3) promptly comply with reasonable requests for information; and
   (4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyer's Rules of Professional Conduct or other law.
   (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

4. Rule 8.1 provides:
   An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
   (a) knowingly make a false statement of material fact; or
   (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

5. Rule 8.4 provides, in relevant part:
   It is professional misconduct for a lawyer to:
   *     *     *
   (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
   (d) engage in conduct that is prejudicial to the administration of justice[.]

### Findings of Fact

The AGC's investigation of Nnaka was triggered by the complaint of Fred and Elizabeth Dowuona and the complaint of Jerry and Jacqueline Shupe. After the hearing, Judge Dugan made a number of findings of fact, by clear and convincing evidence, which we summarize as follows:

Nnaka was originally admitted to the Maryland Bar in 1995. He was decertified in 2009 for nonpayment of his assessment to the Client Protection Fund.

In November 2006, Fred and Elizabeth Dowuona retained Respondent to handle claims arising from a March 2006 automobile accident involving Mrs. Dowuona. Respondent prepared a retainer agreement, signed by both parties, under which he was paid $5000, in two installments, in November 2006 and January 2007. After the agreement was executed, Respondent traveled to Nigeria, his home country, for an extended period without informing the Dowuonas.

The Dowuonas were unable to communicate with Respondent, despite making several attempts to contact him about their case between December 2006 and the beginning of 2007. Furthermore, Respondent did not notify the Dowuonas when he relocated his office within Baltimore in the summer of 2007. The Dowuonas did not hear from Respondent until June 2007, when he called from Nigeria and left them a telephone message saying that the Dowuonas had four years to settle any matters arising from the accident.

On November 8, 2007, Respondent met with the Dowuonas, who requested that Respondent provide them with documents relating to any work Respondent had performed. He was unable to do so. Respondent instead demanded an additional $15,000 to continue his representation. After the Dowuonas declined, Respondent did not return their documents so that the Dowuonas could retain new counsel.

The next day, Respondent wrote the Dowuonas and said that he did not believe they had a cause of action stemming from the March 2006 accident, and that he would not be

providing any additional legal representation. Respondent also provided an invoice accounting for the $5000 fee and detailing services rendered from July 2006 to November 2007. The time billed "appears suspect," but Bar Counsel did not pursue the issues of theft or misappropriation of funds.

A letter from Respondent to Bar Counsel in the Dowuonas' case asserted that Respondent agreed only to review the case and determine if there was a basis for a lawsuit. The Dowuonas disputed this, claiming that Respondent was hired to represent them and that the retainer was also to be used to hire an accident reconstruction expert. The Dowuonas did not testify or submit affidavits to this effect, however, and the Court was unable to judge their credibility. Based on the evidence submitted at the hearing, it is unclear whether Respondent was hired merely to investigate or to also provide further legal services. The Court did not make a specific finding of fact on this issue.

Respondent was also retained by Jacqueline and Jerry Shupe in February 2004, to represent them in claims arising from dental work performed by Vivencio R. Reyes in February 2003. Mrs. Shupe alleged medical malpractice against Reyes, and Mr. Shupe sought a loss of consortium claim. In June 2005, the Shupes paid Respondent an initial retainer of $3000.

Shortly before the statute of limitations was to run, on February 10, 2006, Respondent filed a complaint against Reyes on behalf of the Shupes in the Circuit Court for Baltimore City. In the complaint, Respondent attached a document captioned "Certificate of Merit and Report of Expert Witness," signed by Richard M. Rosenthal, D.M.D. The Certificate failed to comply with the statutory requirement that a report of the expert be attached. On July 16, 2006, Respondent served a designation of experts upon the defendant, in which he identified Rosenthal as the plaintiffs' expert, but he again did not provide an expert report.

While the Shupes' case was pending, Respondent did not cooperate with discovery, causing defense counsel to file a

motion to dismiss or, in the alternative, to compel discovery. The motion was granted on January 24, 2007, and the Shupes had to comply with all outstanding discovery requests or suffer a dismissal of their case. Respondent failed to comply with the court's order, and he did not advise his clients about the failure to file the expert report, the motion to compel, or any of the outstanding discovery in their case. Instead, in November 2006, Respondent left the United States for Nigeria, apparently to run for president of Nigeria. While Respondent was out of the country in December 2006, defense counsel filed a motion to strike plaintiffs' certificate of qualified expert and to dismiss for failure to comply with the corresponding statutes. Respondent did not advise the Shupes of his absence from the country or of the motions to strike and dismiss.

During December 2006, Respondent shared office space and an assistant, Angela Gathogo, with another Maryland attorney, Theo I. Oguine. While Respondent was out of the country, Gathogo informed Oguine of the motions to strike and dismiss. Oguine thus filed a motion for extension of time to respond to those motions, in an effort to buy Respondent some time to return to the United States. Oguine did not seek compensation from the Shupes for his efforts, and the Shupes knew neither that Oguine had filed the motion on their behalf nor that Respondent was still out of the country.

The only disputed point in the Shupes' case was how their case would be covered during Respondent's travels to Nigeria. In a letter to Bar Counsel, Respondent claimed that the Shupes were informed that he would be leaving and that he had arranged for Oguine to assist with their case. The Shupes asserted that the Respondent never advised them that he had arranged for Oguine to assist with the case. Neither of the Shupes testified, nor did they submit signed affidavits on this point. Oguine was also not called as a witness. The Court was unable to assess the credibility of the contradictory claims and did not make a factual finding on this point.

In the Shupes' tort case, a hearing was scheduled for February 26, 2007, on the defense's motions to strike and dismiss. Respondent did not notify the Shupes about the hearing until the morning of the 26th, when he called Mrs. Shupe and told her to come to Respondents' office immediately. When the Shupes arrived, Respondent told them that they needed to appear in court later that day. Respondent instructed the Shupes to appear without representation and tell the judge that they had fired him. Respondent further told the Shupes that they should request a postponement, and Respondent advised them to prepare a letter discharging his services and a subsequent letter re-hiring him.

The Shupes followed his instructions and appeared in court alone. Respondent did not appear. After the hearing, the court ordered the case dismissed without prejudice for failure to comply with the statutes regarding experts. The dismissal, despite being without prejudice, effectively extinguished their claims because re-filing the case would have been barred by the statute of limitations. After dismissal, Respondent suggested to the Shupes that he be discharged, and he would file a motion for reconsideration that the Shupes could file *pro se*. Respondent advised the Shupes that if they could get the case reinstated, he would return as their lawyer.

### Conclusions of Law

Based on the foregoing findings of fact, Judge Dugan made the following conclusions of law:

This court concludes that Respondent, after being engaged to provide legal services to Fred and Elizabeth Dowuona and Jerry and Jacqueline Shupe, failed to act with reasonable diligence and promptness in carrying out the representation of his clients, thereby violating [MLRPC] 1.3. Respondent also failed to keep the Dowuonas and Shupes reasonably informed about the status of their cases, did not respond to reasonable requests for information made by his clients regarding their matters, and failed to consult with his clients concerning his limitation in representing them in their matters due to his frequent travel to

Nigeria, thereby violating [MLRPC] 1.4(a). Furthermore, Respondent violated [MLRPC] 1.4(b) by not explaining to his clients, as in the case of Mr. and Mrs. Shupe, the ramifications of the dismissal of their case to the extent reasonably necessary to permit them to make informed decisions regarding Respondent's representation.

With respect to his representation of Mr. and Mrs. Shupe, this Court is not satisfied that Respondent violated [MLRPC] 1.1 by failing to file the Shupes' expert report in compliance with the Maryland rules. At the time of his representation of Mr. and Mrs. Shupe, it was common practice by many experienced medical malpractice attorneys in Maryland to file expert certificates without an attached expert report. . . .

It is apparent that Respondent abandoned his law practice and his clients, as he was, and currently still is, decertified for his failure to pay his assessment to the Client Protection Fund and has not attempted to get reinstated. In his letter to Bar Counsel, dated July 10, 2008, Respondent stated that he was on extended assignment overseas and had temporarily closed his office. To date, Respondent has not reopened his office, appears to still be overseas, and has failed to respond at all in this instant disciplinary matter.

Respondent violated [MLRPC] 8.1(b) when he knowingly failed to respond to lawful demands for information from the office of Bar Counsel. However, as previously discussed, this Court declined to make a factual finding regarding whether Respondent arranged for Mr. Oguine to assist the Shupes with their case while he was in Nigeria. Accordingly, this Court does not find that Respondent violated [MLRPC] 8.1(a) and 8.4(c), on the basis charged by Bar Counsel, that he knowingly made a false statement to Bar Counsel concerning his representation of the Shupes and the alleged arrangement he made with Mr. Oguine to assist him in their matter. Nevertheless, this Court finds that Respondent violated [MLRPC] 8.4(c) on the basis that Respondent engaged in uncontradicted allegations involving

fraud, deceit and misrepresentation when he instructed Mr. and Mrs. Shupe to lie to the Court, at the February 26, 2007 hearing, by stating that they had fired him, in order to cover up his misconduct.

Taken in its totality, the Respondent's conduct was prejudicial to the administration of justice, and therefore violated [MLRPC] 8.4(d).

## Discussion

### *Standard of Review*

As we recently explained in *Attorney Grievance Commission v. Tanko:*

In attorney discipline proceedings, this Court has original and complete jurisdiction and conducts an independent review of the record. We accept a hearing judge's findings of fact unless we determine that they are clearly erroneous. That deference is appropriate because the hearing judge is in a position to assess the demeanor-based credibility of the witnesses. In that regard, the hearing judge is permitted to pick and choose which evidence to rely upon from a conflicting array when determining findings of fact.

We review de novo the hearing judge's proposed conclusions of law. In other words, the ultimate determination ... as to an attorney's alleged misconduct is reserved for this Court. In that regard, we examine the record to ascertain whether there was sufficient evidence to support the hearing judge's legal conclusions, by a clear and convincing standard of proof.

*Att'y Griev. Comm'n v. Tanko,* 427 Md. 15, 27–28, 45 A.3d 281, 288 (2012) (citations and quotation marks omitted).

### *Exceptions*

Both parties are permitted to "file (1) exceptions to the findings and conclusions of the hearing judge and (2) recommendations concerning the appropriate disposition...." Md. Rule 16–758(b). If neither party files any exceptions, "the Court may treat the findings of fact as established for the

purpose of determining appropriate sanctions, if any." Md. Rule 16–759(b)(2)(A). In this case, neither party filed any exceptions to the Circuit Court's findings. In fact, Respondent has failed to respond at all in this disciplinary proceeding. He did not answer the charges in the Petition, he did not appear in court for the hearing on August 31, 2009, he filed no exceptions, and he did not appear before this Court at oral argument. As such, we shall consider the Circuit Court's findings of facts established.

*Conclusions of Law*

Judge Dugan found that Respondent violated MLRPC 1.3, 1.4(a), 1.4(b), 8.1(b), 8.4(c), and 8.4(d). MLRPC 1.3 requires an attorney to act with reasonable diligence and promptness in representing a client. Here, Nnaka traveled to Nigeria and was uncommunicative with the Dowuonas for "many months"—between December 2006 and June 2007. In his representation of the Shupes, Nnaka did not comply with initial discovery requests, nor did he comply with a subsequent court order compelling discovery. This conduct violated MLRPC 1.3. *See also Att'y Griev. Comm'n v. London*, 427 Md. 328, 47 A.3d 986 (2012) (finding violation of MLRPC 1.3 for "failure to consistently monitor and manage a client's business" and "neglect[ing] to perform the necessary services for [a] client").

MLRPC 1.4 requires an attorney to keep his clients reasonably informed about the status of legal matters and to explain matters to the client to the extent reasonably necessary to allow the client to make informed decisions about the representation. Nnaka did not do so for either the Dowuonas or the Shupes. He was out of communication with the Dowuonas for months and did not advise them that he was traveling to Nigeria. Nnaka also failed to inform the Dowuonas that he was relocating his law office and was unable to produce documents relating to work he had performed for their case.

With respect to the Shupes, Nnaka did not advise them of his failure to file the expert report, of any outstanding discov-

ery requests, or defense counsel's motion to compel discovery. Nnaka did not inform the Shupes when the defendant in the Shupes' case filed a motion to strike plaintiffs' expert, as he was still out of the country. He also did not notify the Shupes about their hearing on the motion to strike until that morning. Furthermore, he instructed the Shupes to lie to the judge about his representation, resulting in the dismissal of their lawsuit past the running of the statute of limitations. This was a clear failure to explain matters in a way allowing the Shupes to make an informed decision about the case. Compounding matters, Nnaka effectively abandoned his law practice by leaving the country. These are all clear violations of MLRPC 1.4(a) and (b). *See, e.g., Att'y Griev. Comm'n v. Kreamer*, 404 Md. 282, 303, 946 A.2d 500, 512 (2008) (finding a violation where the attorney failed to communicate with client over a five-month span); *Att'y Griev. Comm'n v. Hodgson*, 396 Md. 1, 6, 912 A.2d 640, 643–44 (2006) (finding a violation under circumstances similar to those here); *Att'y Griev. Comm'n v. Rose*, 391 Md. 101, 107–08, 892 A.2d 469, 473 (2006) (finding a violation where an attorney, among other things, moved his office without informing his clients).

MLRPC 8.1(b) prohibits an attorney from knowingly failing to respond to a lawful demand for information from a disciplinary authority. Respondent did respond to the Dowuonas' initial complaint—albeit a week later than he said he would—and he did acknowledge that the Shupes had filed a grievance against him, but he did not respond to it. Since then, Nnaka did not file an answer to the charges in the Petition and failed to appear in Circuit Court for his hearing. The failure to respond to Bar Counsel clearly violates MLRPC 8.1(b). *See, e.g., Att'y Griev. Comm'n v. Park*, 427 Md. 180, 46 A.3d 1153 (2012) ("The failure to respond to Bar Counsel's inquiries with respect to its investigation of a disciplinary matter clearly violates MLRPC 8.1(b).").

Finally, MLRPC 8.4 states that it is misconduct for an attorney to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation, or to engage in conduct prejudi-

cial to the administration of justice. When Nnaka instructed the Shupes to lie to the court concerning the nature of his representation, he clearly violated the prohibition against deceitful conduct in MLRPC 8.4(c). And taken as a whole, Nnaka's conduct was prejudicial to the administration of justice and violated MLRPC 8.4(d). *See, e.g., Park,* 427 Md. at 187–88, 46 A.3d at 1157 (finding violation of MLRPC 8.4(d) where the attorney did not represent client diligently, in violation of Rule 1.3, did not communicate with his client, in violation of Rule 1.4, and failed to respond to bar counsel's inquiries).

*Sanction For Violations of MLRPC Rules 1.3, 1.4(a), 1.4(b), 8.1(b), 8.4(c), and 8.4(d)*

Having concluded that Nnaka violated MLRPC 1.3, 1.4(a), 1.4(b), 8.1(b), 8.4(c), and 8.4(d), we turn to the appropriate sanction. Petitioner recommends disbarment, citing the multiple rules violations, Nnaka's failure to respond in the disciplinary proceeding, and his apparent abandonment of his law practice. Further, Nnaka has offered no justification for a less severe sanction.

This Court sanctions unscrupulous attorneys to protect the public and the public's confidence in the legal profession. *See, e.g., Park,* 427 Md. at 187–88, 46 A.3d at 1157; *Att'y Griev. Comm'n v. Sucklal,* 418 Md. 1, 10 n. 3, 12 A.3d 650, 655 n. 3 (2011). Sanctions accomplish these goals by deterring the conduct that will not be tolerated and by removing those unfit to practice law from the rolls of authorized practitioners. *See, e.g., Att'y Griev. Comm'n v. Usiak,* 418 Md. 667, 689, 18 A.3d 1, 14 (2011).

Petitioner's recommendation is supported by several cases in which we disbarred an attorney for similar conduct. In *Hodgson,* we disbarred an attorney for violations of MLRPC 1.3, 1.4(a), 1.4(b), 8.1(b), and 8.4(d). *See Hodgson,* 396 Md. at 6–8, 912 A.2d at 643–44. The respondent in that case failed to explain the consequences of the dismissal of her client's case; did not respond to repeated requests for information; did not

respond to lawful demands for information from the disciplinary authority; and acted in such a manner that was prejudicial to the administration of justice. *See id.* In *Tinsky,* we disbarred an attorney for a similar slate of violations, including MLRPC 1.3, 1.4, and 8.4(d). *See Att'y Griev. Comm'n v. Tinsky,* 377 Md. 646, 653, 835 A.2d 542, 546 (2003). In that case, the respondent's "complete and unexplained abandonment of his law practice" also merited disbarment. *Id.* at 653–56, 835 A.2d at 546–47.

We have also disbarred attorneys for deceitful conduct similar to the kind demonstrated by Nnaka here, when he instructed his clients to lie to the court about the nature of his representation. *See, e.g., Att'y Griev. Comm'n v. Pak,* 400 Md. 567, 575, 610, 929 A.2d 546, 551, 571 (2007) (disbarring an attorney for her actions in advising and assisting fraudulent transactions to avoid a judgment lien); *Att'y Griev. Comm'n v. Culver,* 381 Md. 241, 275, 288, 849 A.2d 423, 443–44, 451 (2004) (disbarring an attorney for misconduct that included advising his client to obtain credit card loans to pay legal fees with the intent of having the debt discharged in bankruptcy). This deceit alone could merit disbarment, without consideration of the other violations. *See, e.g., Att'y Griev. Comm'n v. Keiner,* 421 Md. 492, 523, 27 A.3d 153, 172 (2011) ("[W]hen it appears that the attorney has engaged in intentional dishonest conduct ... disbarment will be the appropriate sanction absent compelling extenuating circumstances." (citations, quotation marks, and alterations omitted)).

Our precedent is clear that disbarment is the appropriate sanction for Nnaka, considering the full extent of his misconduct. He was unresponsive to his clients, changed offices without telling them, failed to keep them informed about their matters, and instructed them to lie to the court about the nature of his representation. He has proven himself unfit to practice law and shall be disbarred.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS,**

PURSUANT TO MARYLAND RULE 16–761. JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST NNAKA IN THE SUM OF THESE COSTS.