68 A.3d 808

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Frank M. COSTANZO.

Misc. Docket AG No. 13, Sept. Term, 2009.

Court of Appeals of Maryland.

June 21, 2013.

234

Fletcher P. Thompson, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

No argument on behalf of respondent

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY *, ADKINS, and BARBERA, JJ.

PER CURIAM.

Petitioner, the Attorney Grievance Commission, acting through its Bar Counsel, filed a Petition for Disciplinary or Remedial Action against Frank M. Costanzo,[1] charging him

---

* Judge Murphy, now retired, participated in the hearing and conference of this case while an active member of the Court, but did not participate in the decision or adoption of this opinion.

1. Respondent was admitted to the Bar of Maryland on February 11, 2005. He was decertified from the practice of law by this Court on

with various violations of the Maryland Lawyers' Rules of Professional Conduct ("MLRPC"), other of the Maryland Rules, and provisions of the Maryland Code (which we shall enumerate *infra*) arising from his representation of seven clients, each of which filed complaints with the Commission. The matter was assigned to a judge of the Circuit Court for Baltimore City for an evidentiary hearing and to make findings of fact and conclusions of law regarding the matters asserted in the Petition.

Costanzo was constructively served, through the Client Protection Fund, with a copy of the Petition, a Writ of Summons, and this Court's order assigning the matter for hearing. Costanzo did not file an answer or other response to the Petition.[2] Bar Counsel sought, and the hearing judge grant-

---

April 8, 2008, for failure to pay the annual assessment to the Client Protection Fund.

2. In support of a determination that Costanzo was aware of the proceedings and that they could proceed in his absence, the hearing judge made the following findings and conclusions in his written decision:

By affidavit, Bar Counsel's investigator, Marc O. Fiedler, stated that he attempted to locate Respondent by visiting his home. He found no one home. Investigator Fiedler obtained Respondent's email address from Respondent's father-in-law, who stated that his daughter and son-in-law were in India, attempting to adopt a child.

Investigator Fiedler stated that he emailed Respondent on July 30, 2008, informing him of six complaints against him. On August 2, 2008, Respondent responded to the initial email stating that he was detained in India. On November 3, 2008, Investigator Fiedler sent another email to Respondent informing him of the seventh complaint. On November 4, 2008, Respondent responded by email informing Mr. Fiedler that he was composing a response concerning Mr. Fielder's requested information. Mr. Fiedler never received a response.

Accordingly, on May 27, 2009, Petitioner served the complaints and accompanying documentation on the Administrator of the Client Protection Trust Fund in compliance with Maryland Rule 16–753. The Client Protection Trust Fund sent a copy of the documentation to Respondent's last known address. Service was sent by regular mail and certified mail, restricted delivery to Respondent's last known address. This documentation was returned to the Client Protection Trust Fund as undeliverable.

Based on Mr. Fiedler's affidavit and the accompanying emails, this Court determines that Respondent has actual knowledge of these

ed, an order of default. A hearing was held on September 18, 2009, on Bar Counsel's ex parte proof. Costanzo did not appear. Bar Counsel, at the hearing, abandoned five of the complaints and produced evidence only as to the remaining two, those of Gilbert Hoffman and Louis Haug. The hearing judge, on November 5, 2009, filed his written opinion, in which he concluded that Bar Counsel proved, by clear and convincing evidence, each violation alleged against Costanzo in his representation of Hoffman and Haug. No mitigating circumstances were found.

No exceptions were filed to the judge's Findings of Fact and Conclusions of Law. Bar Counsel recommended disbarment as the appropriate sanction. In addition to filing nothing, Costanzo failed to appear for oral argument before this Court. We agreed with Bar Counsel's recommendation and entered, on February 9, 2010, an Order disbarring Costanzo, with the Court's opinion to follow. This is that opinion explaining why we decided that disbarment was the appropriate sanction.

### Complaint of Gilbert Hoffman

In its Petition, Bar Counsel alleged that Costanzo agreed on May 30, 2007, to represent Hoffman in a breach of contract matter against an entity named Davidson & Associates. Hoffman claimed to have hired Davidson & Associates to assist him in obtaining a patent on a product idea for a "golf ball finder" device. Although Hoffman paid $9,000 as a retainer to Costanzo, Costanzo performed no services for Hoffman, failed to refund or account for the retainer, and terminated his representation of Hoffman on March 28, 2008. Moreover, Costanzo failed to respond to Bar Counsel's written request for information responsive to Hoffman's complaint.

---

proceedings. Further, this Court determines that Respondent failed to provide an address where Petitioner could serve him with the actual documents.

Inasmuch, this Court finds that Respondent has actual knowledge of these proceedings. Accordingly, this Court finds that Petitioner has sufficiently complied with Maryland Rules 2–121 and 116–753. (Internal footnotes omitted.)

Based on these allegations, Bar Counsel charged Costanzo with the following violations:

*MLRPC*

**Rule 1.1. Competence.**

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

**Rule 1.2. Scope of Representation and Allocation of Authority Between Client and Lawyer.**

(a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

(b) A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social or moral views or activities.

(c) A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent.

(d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

**Rule 1.3. Diligence.**

A lawyer shall act with reasonable diligence and promptness in representing a client.

## Rule 1.4. Communication.

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;

(2) keep the client reasonably informed about the status of the matter;

(3) promptly comply with reasonable requests for information; and

(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

## Rule 1.15 Safekeeping Property.

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

* * * * * *

## Rule 1.16. Declining or Terminating Representation.

* * * * * *

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

### Rule 8.1. Bar Admission and Disciplinary Matters.

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

\* \* \* \* \* \*

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

### Rule 8.4 Misconduct.

It is professional misconduct for a lawyer to:

\* \* \* \* \* \*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice[.]

*Other Maryland Rules*

### Rule 16–609—Prohibited Transactions

An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose. An instru-

ment drawn on an attorney trust account may not be drawn payable to cash or to bearer.

*Maryland Statutes*

**Md.Code, Bus. Occ. & Prof. Article. § 10–306. Misuse of trust money.**

A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer.

By a standard of clear and convincing evidence (Md. Rule 16–757(b)), the hearing judge rendered the following findings of fact, based on Bar Counsel's evidence, regarding the Hoffman complaint:

1. The Complainant, Gilbert Hoffman, retained Respondent to represent him in a lawsuit to recover damages he allegedly suffered because of the failure of Davidson Company to develop and market his concept for a golf-ball finder. This finding is supported by the Complainant's testimony, retainer agreement, and copy of a personal check which listed the Respondent as the payee and was signed by the Complainant. The check was in the amount of $9,000.00.

2. On May 30, 2007, Respondent, on behalf of his law firm, Thomas, Connelly & Costanzo, entered into a fee agreement whereby Respondent would represent Complainant for a fee of $9,000.00 plus 24 percent of any amount obtained as a result of settlement and 33.3 percent of any amount obtained as a result of trial.

3. The Fee Agreement provided that the fee was "nonrefundable" and earned and payable on 5/30/09 [sic], the date on which the agreement was signed.

4. On May 30, 2007, Complainant gave the Respondent a check for $9,000.00 as the retainer required by the Fee Agreement.

5. Respondent prepared a draft complaint which he forwarded to Complainant for comment. This draft complaint listed Blue Marlin D/B/A Scout and PDC, Co. as

the Defendants. This draft complaint had nothing to do with the Davidson Company, which the Complainant retained Respondent to sue.

6. After Respondent prepared this document, Complainant was unable to consistently communicate with Respondent. There were some emails, but they were woefully inadequate to the legal assignment at hand.

7. In an email dated November 22, 2007, Respondent advised Complainant that he was in India trying to adopt a child and that complications with this matter had required a massive amount of time away from his office. In the email, he asked for Complainant's patience and stated that he would like to keep him as a client.

8. Complainant did not hear from Respondent for several months afterwards. Complainant sent emails to Respondent without receiving any responses.

9. On March 14, 2008, Respondent advised Complainant that he was home and that he would have a complaint to him that day with a summary of how they would move forward.

10. Respondent did not follow through on this promise. Moreover, Respondent never provided a complaint or a summary of how he planned to proceed in the case. Respondent never filed suit in this case.

11. Beginning on March 25, 2008, in a series of emails, Complainant requested a refund of his retainer.

12. On March 28, 2008, Respondent told Complainant in an email, "I will refund your retainer and will pass the case seamlessly to forwarding counsel. . . ."

13. Respondent never refunded any part of Complainant's retainer.

14. Respondent never filed a complaint on Complainant's behalf. Further, due to financial difficulties as a result

of Respondent's failings, Complainant never got his invention on the market

(Internal footnotes omitted.)

Based on these findings, the hearing judge concluded as follows regarding the alleged violations:

1. *Respondent violated Rules 1.1, 1.2, 1.3, and 1.4.*

The evidence demonstrates that in the eleven months after Complainant retained Respondent, the Respondent prepared a draft complaint for Mr. Hoffman and took no further action after receiving his comments. The draft complaint had nothing to do with the reason Complainant retained Respondent. Respondent was supposed to pursue legal action against Davidson for failing to develop a golf-ball finder. Respondent prepared a draft complaint against Blue Marlin and PDC.

By failing to file suit on Complainant's behalf, Respondent violated Rules 1.1, 1.2, and 1.3. *Attorney Grievance Comm'n v. McCulloch*, 404 Md. 388 [946 A.2d 1009] (2008) (where attorney's failure to pursue client's divorce case after filing suit was found to violate all three rules).

Respondent's failure to do anything more than prepare a draft complaint during the course of the representation shows a lack of competence in violation of Rule 1.1 and a lack of diligence in violation of Rule 1.3.

Respondent's failure to carry out the purpose of the representation is a violation of Rule 1.2. Respondent's failure to communicate with Complainant for several months from November 2007 to March 2008 is a violation of Rule 1.4(a)(2), which requires attorneys to keep clients reasonably informed about the status of their matters.

2. *Respondent's conduct violates Rule 1.15(a), Rule 1.16(d), Rule 8.4, Md. Bus. Occ. & Prof. Code Ann. § 10–306, and Rule 1.5.*[3]

---

**3.** We will comment further in the Discussion portion of this opinion regarding this apparent conclusion of the hearing judge that Costanzo violated MLRPC 1.5.

Based on Respondent's failure to refund Complainant any money from the $9,000.00 retainer and his statement to the Florida Bar admitting that he misappropriated client funds, it is inferable that he spent Complainant's money. *Attorney Grievance Comm'n v. Duvall*, 384 Md. 234 [863 A.2d 291] (2004)(where the hearing judge infers from passage of time and lack of accounting to client that trust funds were expended by attorney). This conduct violates the requirement of Rule 1.15(a) that Respondent keep his own property separate from that of his clients. It also violates the requirement of Rule 1.16(d) that an attorney return any unearned fee at the termination of the representation. *Attorney Grievance Comm'n v. Tinsky*, 377 Md. 646, 652 [835 A.2d 542] (2003) (where Respondent was found to violate Rule 1.16(d) by failing to return unearned fees when he abandoned his practice).

The advance retainer payment made by Mr. Hoffman was trust money within the meaning of Md. BOP § 10–306, which should have been deposited in a trust account pursuant to Md. BOP § 10–306. Respondent's use of these funds for his own purposes is a breach of fiduciary duty in violation of Rule 8.4(c) and a misuse of trust money in violation of Rule 16–609 and BOP § 10–306. *Attorney Grievance Comm'n v. McCulloch*, 404 Md. 388 [946 A.2d 1009] (2007)(where attorney's expenditure of advance fee payment was found to violate Rule 8–4(c)); (*Attorney Grievance Comm'n v. Roberts*, 394 Md. 137 [904 A.2d 557] (2006))(where expenditure of funds due to medical providers from personal injury settlements violated Rules 1.15(a) and 8.4(c), Rule 16–609, and BOP § 10–306).

It is not a defense to Respondent's use of the advance fee payment for his own purposes that the Fee Agreement stated that it was non-refundable. The Court of Appeals has stated in a case in which it was not directly presented with the issue that such provisions in fee agreements "would most likely violate Rule 1.5," which prohibits unreasonable fees, because it is unreasonable for an attorney to enter into a fee agreement which provides that he will be paid for

work not performed. *Attorney Grievance Comm'n v. Briscoe* [357 Md. 554], 745 A.2d 1037, 1042 n. 13 [13] (Ct. of App.2000). Because the advance fee payment belonged to the client until Respondent earned it, his appropriation of it to his own use violates the rules and statute Petitioner has cited.

### *Complaint of Louis C. Haug*

Bar Counsel's Petition alleged that, in August 2006, Haug retained Costanzo to defend him in a suit filed by the U.S. Securities & Exchange Commission ("SEC") in the U.S. District Court for the Middle District of Florida. The SEC claimed that Haug and one Edward Diggs had marketed unregistered securities. As the result of mediation, a settlement in concept was reached whereby Haug agreed to pay $50,000, subject to submission of personal financial statement and execution of a formal settlement agreement.

To effectuate the proposed settlement, Haug wired $50,000 into Costanzo's trust account on January 29, 2007. In mid-February 2007, Haug also delivered to Costanzo an additional $650 in post-settlement interest on the $50,000. Additionally, at Costanzo's request, Haug sent him $1,500, representing Haug's share of the mediator's fee.

Between April 2007 and March 2008, Haug did not receive any communications from Costanzo. In the last week of March 2008, Haug received from the Florida federal court a copy of an order suspending Costanzo from practice before the court for failure to pay Florida Bar dues and failure to answer a show cause order. On top of that, on April 1, 2008, the receiver in the federal SEC court action telephoned Haug to inquire: (1) if he had engaged new counsel yet; (2) why he had not responded to the SEC's rejection of the settlement agreement, after its review of Haug's personal financial statement; and (3) whether Haug intended to accept the SEC's counter-proposal that he pay (over time) an *additional* $50,000. Haug, dumbfounded, replied he knew nothing about this new information, had not heard from Costanzo for almost

a year, and had sent him over $50,000 already. The receiver acknowledged that he also had not heard from Costanzo for several months.

A couple of days after his enlightening conversation with the receiver, Haug received an email from Costanzo. In the email, Costanzo related his pilgrimage to India, getting sick while there, and, for the first time, told Haug about the rejected settlement proposal. Costanzo assured Haug that he maintained in trust all of the funds Haug had sent him. That representation notwithstanding, Costanzo, as of the filing by Bar Counsel of the Petition in April 2009, had not accounted for the funds or refunded any part of the funds to Haug. Costanzo failed to respond to Bar Counsel's written request for a reply to Haug's complaint.

Based on these allegations, Bar Counsel charged Costanzo with the following violations:

*MLRPC* (We shall not repeat the verbatim text of any Rule supplied previously in this opinion.)

**Rule 1.1. Competence.**

**Rule 1.2. Scope of Representation and Allocation of Authority Between Client and Lawyer.**

**Rule 1.3 Diligence.**

**Rule 1.4. Communication.**

**Rule 1.15 Safekeeping of Property.**

(a)

**Rule 8.1 Bar Admission and Disciplinary Matters.**

(b)

**Rule 8.4. Misconduct.**

(c)

(d)

*Other Maryland Rules*

**Rule 16–609—Prohibited Transactions.**

*Maryland Statutes*

**Md.Code, Bus. Occ. & Prof. Art., § 10–306. Misuse of trust money.**

By a standard of clear and convincing evidence, the hearing judge rendered the following findings of fact, based on Bar Counsel's evidence, regarding the Haug complaint:

1. In July 2006, Complainant retained Respondent to represent him in litigation with the SEC. The SEC was seeking monetary damages from Complainant alleging that he had participated in a scheme to defraud.

2. Respondent agreed to represent complainant at an hourly rate of $225.00.

3. Complainant paid respondent an initial retainer of $50,000.00.

4. Respondent entered into negotiations with the SEC and in late January 2007 reached a tentative agreement whereby Complainant would settle the matter with the SEC for $50,000.00. The settlement was subject to a review of Complainant's financial statement.

5. On January 29, Complainant wired $50,000.00 to Respondent for him to hold in escrow while the proposed agreement was being reviewed. Respondent told Complainant that he would keep the funds in his trust account and would wire them to the receiver upon approval of the settlement agreement.

6. In mid-February 2007, Respondent advised Complainant that the receiver wanted post-settlement interest from him. The receiver agreed to accept $650.00 and Complainant gave Respondent a check for this amount. Complainant never received credit for the $650.00 transferred to Respondent for the post-settlement interest.

7. On February 12, 2007, Respondent advised Complainant that he needed to pay his share of the mediator's fee, which was $1,500.00. Complainant gave Respondent a check for this amount. Respondent never paid this fee, nor did he reimburse Complainant.

8. Between May and September 2007, Complainant received telephone calls from the mediator's office about the status of this payment. When Complainant called Respondent to ask him why he had not paid the mediator, Respon-

dent advised Complainant that he would take care of the obligation immediately.

9. Eventually, Respondent asked Complainant to pay the mediator directly. Complainant made the payment on September 21, 2007. Respondent never reimbursed the complainant for the initial $1,500.00 payment.

10. In the last week of March 2008, Complainant received an order from the United States District Court for the Middle District of Florida suspending Respondent from the practice of law for failing to pay dues and for failing to answer a Show Cause Order.

11. On April 1, 2008, Complainant received a call from the receiver asking if he had retained new counsel after Respondent's suspension.

12. Complainant said that he had just learned of the suspension and had not had time to hire new counsel. The receiver then advised Complainant that this $50,000.00 offer had been rejected and that the SEC had proposed an additional payment of $50,000.00 to be paid over time. The receiver said he believed that this payment was warranted because of Complainant's financial situation.

13. Respondent did not advise Complainant of the SEC's rejection of the tentative settlement agreement or of the making of a counter-offer.

14. After Complainant learned of Respondent's suspension, he began a series of emails with Respondent. In these communications, Complainant asked Respondent to wire the $50,000.00 settlement funds to the receiver.

15. During the correspondence, Respondent explained that he had been in India with his wife trying to adopt a child and had contracted Dengue fever. He also stated that his "accounts were a mess and that I can't make heads or tails of what's been coming in and what's been going out."

16. On May 14, 2008, at the end of the correspondence, Respondent promised to wire the funds with interest to the receiver.

17. Respondent never wired the funds to the receiver. Complainant settled with the SEC without the benefit of the funds he had given Respondent for this purpose. Respondent has never repaid Complainant.

18. On May 23, 2008, Complainant filed a complaint with Petitioner.

19. On November 3, 2008, Petitioner's investigator sent Respondent an email in which he asked him to explain what happened to Complainant's $50,000.00.

20. Respondent did not respond to this request.

21. In December 2008, the Bar of the State of Florida commenced disciplinary proceedings against Respondent, in part because of his misappropriation of Complainant's funds. In the course of this proceeding Respondent admitted that he "misappropriated client funds." [4]

22. At the beginning of the representation, Complainant paid Respondent an initial retainer of $50,000.00.

23. During the course of the representation, Respondent requested an additional $50,000.00 retainer payment from Complainant. Complainant paid this amount.

24. Respondent did not refund any of this money to Complainant nor did he give Complainant an accounting of the time spent on his case.

(Internal footnotes omitted.)

Based on these findings, the hearing judge concluded as follows regarding the alleged violations:

1. *Respondent violated Rule 1.4.*

By failing to communicate to Complainant that the SEC had disapproved the $50,000.00 settlement and made a new offer, Respondent violated Rule 1.4(a)(2).

2. *Respondent violated Rules 1.15(a), 1.16(d), 8.4(b) and (c), Rule 16–609, and BOP § 10–306.*

---

**4.** The hearing judge noted, in a footnote, that, in the Florida Bar disciplinary proceedings, Costanzo acknowledged: "I can say with certainty that I am not fit to practice law and have not been for many months."

As with the Hoffman complaint, it is inferable from Respondent's failure to return the settlement money to Complainant, or respond to Bar Counsel, and from his admissions in the Florida proceeding that he has spent Complainant's money. It is also inferable that Respondent expended Complainant's retainer for private use. Both of these acts are violations of 1.15(a), 1.16(d), 8.4(c), Rule 16–609, and BOP § 10–306. His misappropriation of the funds entrusted to him for settlement with the SEC is clearly theft, in violation of Md.Crim. Law Code Ann., § 7–104, and, therefore, a violation of Rule 8.4(b). *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376 [773 A.2d 463] (2001).

## DISCUSSION

 "This Court has complete and original jurisdiction over all attorney discipline proceedings in Maryland." *Att'y Griev. Comm'n v. Nwadike,* 416 Md. 180, 192, 6 A.3d 287, 294 (2010). Although the Court conducts an independent review of the record, we uphold the hearing judge's findings of fact, unless shown to be clearly erroneous. *Att'y Griev. Comm'n v. Uguwuonye,* 405 Md. 351, 368, 952 A.2d 226, 235–36 (2008). If neither party files exceptions to the hearing judge's findings of fact, "the Court may treat them as established for the purpose of determining appropriate sanctions." Md. Rule 16–759(b)(2)(A). The Court, however, reviews the hearing judge's conclusions of law without deference. *Att'y Griev. Comm'n v. Lara,* 418 Md. 355, 364, 14 A.3d 650, 656 (2011); Maryland Rule 16–759(b)(1).

Because no exceptions were filed to the hearing judge's findings of fact, we accept them as established.[5] Bar Counsel recommended disbarment because Costanzo misappropriated

---

5. As noted previously in this opinion, we disbarred Costanzo by summary order on February 9, 2010. Therefore, the usual suspense attendant to the revelation of our explanation of the outcome of our non-deferential review of the hearing judge's conclusions of law and determination of the appropriate sanction (if any) are somewhat anti-climatic, but necessary.

funds from both Hoffman and Haug, abandoned his represen-
tation of them, and made no restitution.

First, we need to dissipate some confusion as to what
regulatory provisions Costanzo was charged with violating and
which the hearing judge concluded he violated (or, by offering
no clear conclusion as to particular charges or finding appar-
ent violations of uncharged provisions, left some ambiguities in
the findings of fact and conclusions of law for us to sort out).
To better appreciate the charges in play (or not), see Appen-
dix "A" to this opinion.

The sum of the information reflected in Appendix "A" is
that the hearing judge concluded expressly in the Hoffman
matter that Costanzo violated MLRPC 1.1, 1.2, 1.3, 1.4(a)(2),
1.15(a), 1.16(d), 8.4(c); Md. Rule 16–609; and Bus. Occ. & Prof
Art. § 10–306. Unmentioned in his disposition of the charges
lodged by Bar Counsel in the Hoffman matter are Md. Rule
16–609 or MLRPC 8.1(b) or 8.4(d).[6] Moreover, an apparent
violation of MLRPC 1.5 is found; however, Bar Counsel did
not charge Costanzo in its Petition with violating that provi-
sion. Bar Counsel took no exceptions.

In the Haug matter, the hearing judge concluded expressly
that, of the charges levied in Bar Counsel's Petition, Costanzo
violated MLRPC 1.4(a)(2), 1.15(a), 1.16(d), and 8.4(b) and (c);
Md. Rule 16–609; and Md.Code, Bus. Occ. & Prof. Art., § 10–
306. Although Bar Counsel charged Costanzo with violating
MLRPC 1.1, 1.2, 1.3, 8.1(b) and 8.4(c) and (d), the hearing
judge's conclusions of law are silent as to them. Moreover,
the hearing judge appears to have concluded that Costanzo

---

**6.** It appears from some indications in two of this Court's earlier
precedents that, when a hearing judge neglects to express a conclusion
of law as to a properly charged "violation" and no party excepts to that
omission (and perhaps even where the evidence and accepted findings
of fact may support a conclusion that the unaddressed charge was a
sound one), the Court ignores the unaddressed charge in its non-
deferential analysis and determination of sanction. *See Att'y Griev.
Comm'n v. Kwarteng,* 411 Md. 652, 658 n. 14, 984 A.2d 865, 868 n. 14,
(2009); *Att'y Griev. Comm'n v. Snyder,* 368 Md. 242, 247 n. 1, 793 A.2d
515, 518 n. 1 (2002). We follow that lead uncritically here, mostly
because it makes no difference to the outcome in the present case.

violated MLRPC 1.16(d) and MLRPC 8.4(b), violations of which he was not charged in Bar Counsel's petition, and Md.Code, Crim. Law Art., § 7–104, for which also he was not charged. Bar Counsel took no exceptions.

*MLRPC 1.1, 1.2, and 1.3*

"MLRPC 1.1 requires an attorney to provide competent representation to his/her client by applying the appropriate knowledge, skill, thoroughness, and preparation to the client's issues. A failure to make the proper and required filings in a client matter demonstrates a lack of the appropriate preparation and thoroughness necessary to provide competent representation." *Att'y Griev. Comm'n v. Shakir,* 427 Md. 197, 205, 46 A.3d 1162, 1167 (2012) (concluding that an attorney who failed to file an asylum application for his client and failed to appear at his client's immigration hearing violated MLRPC 1.1) (citing *Att'y Griev. Comm'n v. Guida,* 391 Md. 33, 54, 891 A.2d 1085, 1097 (2006)). MLRPC 1.2 requires an attorney to abide by his or her client's decisions regarding objectives of representation and to consult with a client, when appropriate, as to how to pursue those objectives. *Att'y Griev. Comm'n v. Brown,* 426 Md. 298, 319–20, 44 A.3d 344, 357 (2012) (where we held the attorney violated MLRPC 1.2 when he failed to prosecute his clients' cases, inform his clients that their cases were dismissed consequently, and to respond to his clients' requests for information). Lastly, an attorney violates MLRPC 1.3 by failing to represent the client diligently and promptly. *Brown,* 426 Md. at 320–21, 44 A.3d at 357–58 (holding that the attorney violated MLRPC 1.3 when he did not prosecute his client's claim after filing a complaint or protect against expiration of the statute of limitation for his client's complaint, and caused discovery sanctions to be filed for his failure to respond to discovery requests).

Here, Costanzo failed to provide Hoffman with competent and diligent representation, and did not consult with his client as to the objectives of the retained representation. Respondent failed to pursue a claim on Hoffman's behalf against Davidson for the failed development of a golf-ball

finder concept, and instead erroneously drafted a complaint against unrelated entities, Blue Marlin and PDC. Costanzo's inaction lasted the entire eleven months of his representation of Hoffman.

### MLRPC 1.4(a)(2)

Under MLRPC 1.4(a)(2), an attorney must "keep his clients reasonably informed about the status of legal matters and ... explain matters to the client to the extent reasonably necessary to allow the client to make informed decisions about the representation." *Att'y Griev. Comm'n v. Nnaka,* 428 Md. 87, 98, 50 A.3d 1187, 1194 (2012) (where we held that the attorney violated MLRPC 1.4(a) because he traveled outside of the country and maintained no communication with his clients concerning their case for seven months, did not inform his clients of his law office relocation, and was unable to provide documents regarding the work he performed for their case).

■ Costanzo violated MLRPC 1.4(a)(2) by failing to communicate with Hoffman concerning his case or comply promptly with Hoffman's requests for information—apart from a few inadequate e-mails—from November 2007 to March 2008. Respondent's failure to inform Haug that the SEC rejected his offer and his complete lack of communication with Haug from April 2007 to April 2008 constitute violations of MLRPC 1.4(a)(2).

### MLRPC 1.15(a), Md. Bus. Occ. & Prof. Article § 10–306, and Md. Rule 16–609

■ By failing to refund or to account to Hoffman or Haug for each retainer paid (in addition to the $50,000 Haug entrusted to Costanzo for the SEC settlement offer) for Costanzo's respective representation, Costanzo violated MLRPC 1.15(a), which requires an attorney to safeguard his or her client's property, to maintain it separate from the attorney's own property, and to provide an appropriate accounting of his or her client's property. *See Att'y Griev. Comm'n v. Page,* 430 Md. 602, 629–30, 62 A.3d 163, 179–80 (2013); *Att'y Griev.*

*Comm'n v. Duvall,* 384 Md. 234, 240, 863 A.2d 291, 294 (2004) (an attorney's failure to maintain the unearned balance of her client's retainer separate from her own property was held to have violated MLRPC 1.15(a)).

 Costanzo's misuse of his clients' funds—which constitute trust money within the meaning of Md. Bus. Occ. & Prof. Article § 10–306—by not depositing the retainers in a trust account also violated Md. Rule 16–609. *Att'y Griev. Comm'n v. Goff,* 399 Md. 1, 30, 922 A.2d 554, 571 (2007) (where we concluded that because Md. Rule 16–609, like § 10–306, "proscribes the 'use of any funds [required by these Rules to be deposited in an attorney trust account] for any unauthorized purpose,' " a violation of the former will result in a violation of the latter because "the statute and the Rule have the same requirement.") (quoting Md. Rule 16–609).

### *MLRPC 1.16(d)*

 Pursuant to MLRPC 1.16(d), a lawyer must take "reasonable steps to protect the client's interest" upon terminating a representation, such as by giving the client reasonable notice and refunding any unearned fees. *Att'y Griev. Comm'n v. Garrett,* 427 Md. 209, 225, 46 A.3d 1169, 1178–79 (2012) (where the attorney abandoned his clients without prior notice and did not return unearned fees). Where a lawyer abandons a client without notice "through the failure to take meaningful steps in pursuit of the client's interest, and fail[s] to return unearned portion of a fee paid by the client," he or she violates MLRPC 1.16(d). *Id.* (citing *Att'y Griev. Comm'n v. Brady,* 422 Md. 441, 459, 30 A.3d 902, 912 (2011); *Att'y Griev. Comm'n v. Fox,* 417 Md. 504, 532–33, 11 A.3d 762, 778 (2010)). Here, Costanzo violated MLRPC 1.16(d) when he failed to take any meaningful step in pursuit of Hoffman's interest, abandoned his representation of Hoffman after November 2007 (if not earlier) without any prior notice, and failed to return to Hoffman his $9,000 retainer.

*MLRPC 8.4(c)*

Rules 8.4 prohibits generally attorney misconduct. Subsection (c) proscribes " 'engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation.' " *Garrett,* 427 Md. at 226, 46 A.3d at 1179 (quoting MLRPC 8.46(c)). Based on the record before us, there is no question that Costanzo engaged in egregious misconduct under MLRPC 8.4(c) by misusing his clients' funds and failing to: (1) maintain those funds in trust; (2) account for his clients' funds; (3) provide his clients with meaningful legal services; and, (4) pursue his clients' claims and abide by the agreed terms of representation.

We turn now to the hearing judge's conclusions that Costanzo violated several MLRPC and statutory provisions that were not charged by Bar Counsel in its Petition. As discussed previously, the hearing judge found that Costanzo violated MLRPC 1.5 in the Hoffman matter, and concluded that Costanzo violated MLRPC 1.16(d) and MLRPC 8.4(b), as well as Md.Code, Crim. Law Art., § 7–104, in the Haug matter. It is well established, however, that, in attorney disciplinary proceedings, the "charge must be known before the proceedings commence." *In re Ruffalo,* 390 U.S. 544, 551 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117, 122 (1968). Otherwise, the tacking-on of disciplinary charges against an attorney without notice of such charges deprives the attorney of procedural due process. *Id.* (the "absence of fair notice as to the reach of the grievance procedure and the precise nature of the charges deprive[ ] petitioner of procedural due process"); *Att'y Griev. Comm'n v. Sapero,* 400 Md. 461, 487, 929 A.2d 483, 498 (2007) (procedural due process precludes an attorney being "found guilty of violating a Rule of Professional Conduct unless that Rule is charged in the Petition For Disciplinary or Remedial Action"); *Att'y Griev. Comm'n v. Seiden,* 373 Md. 409, 418, 818 A.2d 1108, 1113 (2003) ("This Court has cited *Ruffalo* for the proposition that 'due process considerations dictate that attorneys are entitled to notice of the charges against them when disciplinary proceedings begin.' ") (quoting

*Att'y Griev. Comm'n v. Goldsborough,* 330 Md. 342, 352, 624 A.2d 503, 508 (1993)). Thus, because Bar Counsel did not charge Costanzo in its Petition with violations of MLRPC 1.5, 1.16(d), MLRPC 8.4(b), or Crim. Law Art., § 7–104, the hearing judge's apparent determinations that Costanzo violated these provisions are vacated and are not considered by us in determining the appropriate sanction.

## SANCTION FOR VIOLATIONS OF MLRPC 1.1, 1.2, 1.3, 1.4(a)(2), 1.15(a), 1.16(d), 8.4(c), MD BUS. OCC. & PROF. ARTICLE § 10–306, and MD. RULE 16–609

 The purpose of sanctions is to "protect the public and the public's confidence in the legal procession." *Att'y Griev. Comm'n v. Edib,* 415 Md. 696, 723, 4 A.3d 957, 973 (2010) (internal citations omitted). This purpose is effectuated when the sanction corresponds with the severity of the violations charged. *Att'y Griev. Comm'n v. Bleecker,* 414 Md. 147, 176, 994 A.2d 928, 945 (2010). Due to Costanzo's egregious patterns of misconduct in his respective representations of Hoffman and Haug and the absence of any mitigation, disbarment is the appropriate sanction. "In the absence of mitigation ... disbarment is the appropriate sanction when an attorney abandons a client by failing to pursue the client's interests, failing to communicate with the client, ignoring a client's repeated requests for status updates, terminating the representation without notice by failing wholly to provide effective services, ... failing to return unearned fees, [and] fail[ing] to cooperate with Bar Counsel's lawful demands for information[.]" *Att'y Griev. Comm'n v. Park,* 427 Md. 180, 196, 46 A.3d 1153, 1162 (2012). Those reasons for disbarment exist here, coupled with Respondent's violations of MLRPC 8.4(c). Accordingly, we ordered disbarment.

## APPENDIX "A"

| Charges in Petition | Hearing Judge's Conclusions as to Hoffman Complaint [1] | Hearing Judge's Conclusions as to Haug Complaint |
| --- | --- | --- |
| MLRPC 1.1 | ✓ | None |
| 1.2 | ✓ | None |
| 1.3 | ✓ | None |
| 1.4(a)(2) | ✓ | ✓ |
| 1.15(a) | ✓ | ✓ |
| 1.16(d) | ✓ | ✓ |
| 8.1(b) | None [2] | None |
| 8.4(c) | ✓ | ✓ |
| 8.4(d) | None [3] | None [4] |
| Rule 16–609 | ✓ | ✓ |
| BOP 10–306 | ✓ | ✓ |

1. In Paragraph 2 of his Conclusions of Law as to the Hoffman complaint, the hearing judge, in the "title" of the numbered paragraph and in the last paragraph of this section of his conclusions, appears to conclude that Costanzo violated MLRPC 1.5 (Fees) for collecting and retaining an advance fee not earned. Bar Counsel did not charge Costanzo with violating this provision.

2. Although Bar Counsel charged Costanzo in the Hoffman matter with violating MLRPC 8.1(b), the hearing judge made no mention of it in his Conclusions of Law.

3. Similar to the lack of an express conclusion as to MLRPC 8.1(b) in the Hoffman matter, the hearing judge neglected to mention MLRPC 8.4(d), although he made mention of 8.4 generically and addressed 8.4(c) specifically.

4. Although not charged in the Haug matter with violating MLRPC 8.4(b) (criminal act adversely reflecting on lawyers' honesty, trustworthiness or fitness as a lawyer), or by implication Md.Code, Crim. Law Art., § 7–104 (general theft provisions), the hearing judge apparently concluded that Costanzo violated these provisions when he misappropriated the funds sent to him by Haug.